STATE *v.* ERNEST G. FOSS.

May Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and
JEFFORDS, JJ.

Opinion filed October 3, 1939.

*Benjamin N. Hulburd* for the respondent.

*Clifton G. Parker,* State's Attorney, for the State.

454

STURTEVANT, J. At the November Term, 1938, of Lamoille county court the respondent, Ernest G. Foss, was informed against by the state's attorney of that county and was charged with the crime of arson. The information was in three counts. Count one charges that respondent on August 21, 1938, at Morristown, wilfully and maliciously burned a barn belonging to Ned G. and Mildred Foss contrary to the provisions of section 1 of No. 202 of the Acts of the Legislature of 1935. Count two charges that the respondent burned the same barn mentioned in count one for the purpose of defrauding an insurance company or companies. Count three charges that respondent on August 21, 1938, wilfully and maliciously set fire to and burned certain personal property, namely, an automobile truck belonging to one Robinson and not the property of the respondent. Trial was had and the jury returned a verdict of guilty on counts one and three and not guilty on count two. The case is here upon two exceptions briefed by respondent, namely: (1) The Court erred in refusing to grant respondent's motion for a directed verdict at the close of all the evidence because (a) there is no evidence in the case from which a jury can reasonably find that the fire was incendiary; (b) the testimony of Stanley Arnold is not such evidence as to warrant a jury in basing a verdict of guilty thereon. (2) The verdict was a compromise verdict.

We first address our attention to the question whether there was evidence in the case from which the jury could reasonably find that the fire was incendiary; that is, did the State produce evidence which justified a finding that the crime of arson had been committed by anyone?

Viewing the evidence in the light most favorable to the State, the following facts appear. The respondent, Ernest G. Foss, is the father of Ned Foss. At all times here material Ned and his wife lived on a farm in Morristown located between Morrisville village and Stowe. On this farm were three main buildings, the house on one side of the road and the cow barn and horse barn on the other side, about one hundred feet from the house. The horse barn and cattle barn were not connected but stood parallel to each other, and between the two was a barnyard. The cattle barn was one hundred forty-four feet long and had tie-ups for one hundred two head of cattle. The main doors from this barn opened into the barnyard. There was also a smaller

opening near the silo from what was known as the small barn floor.

On the night of August 21, 1938, this cattle barn was destroyed by fire. There was a large quantity of hay in the barn at this time. There was $3,000 insurance on the barn and $960 on hay therein. The fair value of the farm before the fire was $12,000 and the fair value after the fire was $3,000. This depreciation of about $9,000 in value was covered by about $4,000 insurance. The farm was mortgaged for more than the insurance and policies provided loss, if any, payable to mortgagees. The respondent was on friendly terms with his son Ned and had signed several notes with him. Respondent worked, helping Ned at the farm much of the time but received no regular compensation for so doing. On August 21, 1938, respondent was at the farm helping to get in some kind of hay designated in this case as hungarian. Several loads of this were drawn in the afternoon and the last load was brought in about eight o'clock in the evening. Ned was using a Ford truck on the farm that belonged to one Robinson and this hay was drawn on this truck. The last load arrived at the barn at about eight o'clock and Ned backed the truck up to the small doors, and as it was late this load was left standing on the truck. The back end of the truck extended into the barn and the doors of the cab on the truck were left open. Ned had a milk route and used this truck on this route, and as it would be necessary to have the truck available for use on this route by seven o'clock the following morning, respondent arranged to stay at Ned's that night and help with the unloading in the morning. After doing the chores the family and help had supper and after supper respondent went to carry home two of the men who had worked there that day, returning to the farm soon after ten o'clock that night. Soon after supper a third hired man, known as Shortey Kimball, went to bed upstairs and Ned went to bed downstairs. Mrs. Ned Foss and some of the children went to bed upstairs, Mrs. Foss being the last one to retire, and she left a light in the kitchen for her daughter, Ernestine, who was out that night and who did not return until after the fire was discovered. Mrs. Ned Foss has a brother, Stanley Arnold, who stayed with her and Ned some of the time, and it was a common practice for Stanley to sleep on the barn floor of the cattle barn if the others had retired when he returned

to the farm at night. On the night of the fire Arnold returned to the farm shortly before ten o'clock and went on to the barn floor and soon went to sleep. He states that he was awakened later, heard the respondent drive up, went to the door and looked out, saw the lights on respondent's car, and that respondent left his car near the horse barn. Arnold did not see where respondent went after he drove up. Respondent states that he went to the house, entered the sun room, removed his shoes and coat, and lay down on a couch and went to sleep, having first turned off the light which Mrs. Foss had left for Ernestine. This light was not burning when Mrs. Foss came downstairs after she had discovered the fire. Arnold again went to sleep after respondent had driven his car near the horse barn and he testified that some time later he was again awakened by some person stumbling or walking near him and he saw someone about ten feet distant going away from him, holding a lighted match high up, and this person went out of the barn. Arnold could not see the person well in the barn, could not tell how he was dressed, and after the person went out could not see him at all. When asked what he saw this person doing Arnold answered, "I did not see but I heard." In reply to the question, "Well, what was he doing?" Arnold answered, "Seems so he went to the truck." Arnold also testified that he saw a light immediately after this in the horse barn and he thought he saw one in the milk house, and then a small light like a burning cigarette approached the respondent's car and he heard the door on this car shut. At once after hearing the car door shut Arnold went to the house, going past the front end of the truck fifteen or twenty feet from it and saw no fire then. Arnold sat down in the rocker on the porch and soon went to sleep. Arnold was questioned repeatedly as to the identity of the person whom he saw with a lighted match on the barn floor. His testimony is equivocal but that most favorable to the State bearing on this question is as follows:

"Q. This man came into the barn with a lighted match?
A. Yes.
Q. Looked around with it?
A. Yes.
Q. Holding it up in his arm?
A. Looked as though it was up here like that.

Q. Walked around some?

A. Yes.

Q. Turned around?

A. Yes.

Q. You saw all that?

A. Yes.

Q. You know Ern Foss well?

A. Yes.

Q. Now was that man Ern Foss or wasn't it?

A. It looked like him.

Q. It looked like him, was it Ern Foss or was it some other person?

A. It looked like him to me. I couldn't swear to it.

Q. Did it look like anybody else?

A. It might be most anybody." (Transcript, page 65.)

Around twelve o'clock midnight Mrs. Ned Foss saw a light reflected on the wall of her room and soon discovered a fire at the barn. She at once got up, shouted that there was a fire at the barn, got her robe and slippers, which took her about two minutes to locate, all this time calling that the barn was on fire, for the purpose of waking the men in the house. After putting on her robe and slippers she went downstairs and out in the yard toward the barn. A short distance from the house she met the respondent coming toward the house. Respondent stated that he heard Mrs. Foss calling, "fire at the barn," and that he jumped up and rushed out without stopping to put on his shoes, went far enough to see that the cab of the truck was all on fire on the inside and ran back to the house for his shoes.

Some six weeks before the fire Ned Foss was using the truck when the cable leading from the battery became short-circuited and smoked and discharged the battery. The cable was repaired by using some tape. On several occasions prior to the fire a defroster wire on the truck had sparked when it came into contact with certain other parts of the truck. This had occurred when the truck was standing and when the truck was in use. Arnold had made some kind of repair to this wire by "smoothing the ends" and using tape. Soon after the fire was found in the cab of the truck it was communicated to the load of dry hungarian and from this load to the barn so that the barn was on fire very soon after Mrs. Foss first called "fire."

■ Since all the evidence relied upon by the State to show that the fire was incendiary is circumstantial, it was incumbent upon the State to produce evidence of circumstances which excluded every reasonable hypothesis excepting that the respondent is guilty. *State* v. *Bean,* 77 Vt. 384, 403, 60 Atl. 807; *State* v. *Davidson,* 30 Vt. 377, 73 A. D. 312; *State* v. *Caliendo,*— Me.—, 4 Atl. (2d) 837, 840; *State* v. *Richards,* 85 Me. 252, 27 Atl. 122, 123; Burrill, Circ. Ev. 176; 1 Starkie, Ev. 466, 501; 1 Greenleaf, Ev. arts. 11, 13.

■ Mere suspicion, however strong, will not supply the place of evidence. *Quigley* v. *Wiley,* 107 Vt. 253, 262, 179 Atl. 206; *State* v. *Richards, supra*; *State* v. *Morney,* 196 Mo. 43, 93 S. W. 1117; Underhill's Crim. Ev. (3rd ed.) sec. 18; *State* v. *Rounds,* 104 Vt. 442, 160 Atl. 249; *High* v. *State,* 2 Okla. Crim. Rep. 161, 101 Pac. 115, 28 L. R. A. (N. S.) 162; *Copeland* v. *State,* 23 Ala. App. 91, 121 So. 445. See, also, *People* v. *Bennett,* 49 N. Y. 137; *People* v. *Ledwon,* 153 N. Y. 10, 46 N. E. 1046.

■ Tested by these rules it appears that the evidence at most raises a mere suspicion that the fire was incendiary. The evidence leaves the cause of the fire uncertain and dependent on conjecture, and by authority of cases last above cited is insufficient to warrant a conviction. Respondent's motion for a directed verdict made at the close of all the evidence should have been granted.

Our disposition of this exception makes it unnecessary to consider other questions raised by respondent.

*Judgment reversed, conviction and sentence set aside and respondent discharged.*