May Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 7, 1941.

*Raymond B. Daniels* for respondent.

*Reginald T. Abare,* States's Attorney, for the State.

BUTTLES, J. The respondent was convicted in County Court of the crime of arson in the first degree in wilfully and maliciously burning the house and barn of Edward McCall in Cabot, Vermont, in the early morning of Dec. 2, 1940. He has brought the case here on exceptions, one of which was taken to the denial by the trial court of respondent's motion for a directed verdict of not guilty, made at the close of the State's case and renewed at the close of all the evidence. The grounds upon which this motion was based were, in substance, (1) that there was no evidence from which the jury could find the *corpus delicti,* in other words that the fire was of incendiary origin, and (2) that there was no evidence from which the jury could find that the burning was the act of the respondent.

In passing upon this motion the evidence must be viewed in the light most favorable to the State. *Picknell* v. *Bean,* 99 Vt. 39, 41, 130 Atl. 578; *MacDonald* v. *Orton,* 99 Vt. 425, 427, 134 Atl. 599; *State* v. *Rounds,* 104 Vt. 442, 448, 160 Atl. 249. The effect of modifying evidence is to be excluded. *Tinney* v. *Crosby, ante* p. 95, 22 Atl. 2d. 145, (decided at the present term of court); *Ste. Marie* v. *Wells,* 93 Vt. 398, 399, 108 Atl. 270.

From the evidence so viewed the following facts appear. The buildings, whose destruction by fire at the time alleged is undisputed, were located on opposite sides of a side road leading off, in a northeasterly direction, from the main road leading from Cabot to Walden. The house was on the northerly and the barn on the southerly side of the road. There was only one other occupied house on this side road, which was that of the witness Petit situated about 600 or 700 feet northerly from these buildings. The McCall house and barn were both rectangular in shape, the house being about 54 by 22 feet and the barn about 80 by 32 feet with the shorter dimension of each building toward the road. At the rear of the northeasterly corner of the house there was a woodshed and about 68 feet from the rear of the barn there was a tool house with metal roof which was the only building that did not burn. The distance between the house and barn was about 44 to 46 feet. Awakened by a member of his household at about 1 A.M., Mr. Petit looked from his window and saw that both the McCall house and barn were all afire but there was more fire in the farther end of each building, that is in the end away from the road and the other building. The woodshed was also burning. There was a considerable amount of snow on the

ground. A hard westerly wind was blowing, the general direction being away from the house toward the barn.

Mr. McCall was a patient in a Burlington hospital where he had been since Nov. 24th. The other occupants of the McCall home, a hired boy 19 years old named Francis Perry, Mrs. Alexander, a sister, and Mrs. Anzelone, a daughter of McCall, went to Burlington on Sunday, the day before the fire to visit Mr. McCall and did not return that night. The evidence does not disclose that there was anyone in the house or barn after they left at about 4:15 Sunday afternoon. When these people left there were two wood fires burning—one in the kitchen stove at the rear of the house and the other in a stove in the sitting room near the middle of the house. On the roof of the barn there was a wind charger or wind mill which generated electricity for the radio and lights in the house. Wires ran from the wind charger to a storage battery in the front room of the house. When the wind charger was allowed to run too long in a high wind the battery would become overcharged and make trouble. On one occasion the wires had been burned out in this way and the window jamb set on fire. It did not appear that the wind charger had been turned off before the people left the house on Sunday.

Mr. Petit and another witness who arrived early at the fire observed a man's tracks in the snow approaching the rear of the house at the corner opposite the woodshed and coming as if from the Walden-Cabot road. A set of similar tracks was discovered leading away from the house in a somewhat more southerly direction, and later in the forenoon the sheriff and others under his direction followed both sets of tracks until both came to or near the Walden-Cabot road. Back tracking the approaching tracks the observers came to a place about 30 to 35 rods from the McCall buildings where the snow had been trodden down so hard that footprints did not show. This area was not more than four feet in diameter and a considerable amount of tobacco juice had been spread around there. There was evidence that someone had urinated once or twice there. It appeared that the respondent habitually chews much tobacco. As the other line of tracks left the house they were wide apart from which the witnesses inferred that the man who made them was running, but farther on they were nearer together, indicating, as the witnesses believed, that the man had slowed to a walk. There were three or four places in this line where the tracks indicated that the person making

them had stopped and turned as if looking back in the direction from which he had come.

All the way down to the Walden-Cabot road the sheriff tried to find a foot print that was plain enough for measurement. Finally he found one suitable for his purpose near the edge of that road in a line of tracks which he was told by his son had been backtracked from the McCall House. This footprint was found to have a total length of twelve inches and a width of sole of five inches. There were no distinguishing marks found in the tracks. Later the footwear worn by the respondent was measured and found to be five inches across the sole with a total length of 12¾ inches.

The tracks appeared to have been made recently. When asked his reason for thinking so the sheriff replied: "I would say the snow was at least twelve inches deep over near the pasture bars, the wind had blown and it had drifted where these tracks were much deeper, which indicated to me that the tracks had to be made since that wind had blown, and the snow, as I remember it now, this last snow had only fallen within a day or two, or two or three days." The sheriff testified, and we take judicial notice, that the open season for hunting deer was during the last ten days in November.

The respondent was seen by four witnesses in Lower Cabot or on the road from Lower Cabot to Woodbury, some five or six miles from the McCall farm, walking toward his home in Woodbury, at about 6:30 to 7:10 o'clock on the morning following the night of the fire which one of these witnesses thought was on December 6th. A fifth witness gave similar testimony except that he fixed the day on which he saw the respondent at about a week after the fire. The respondent inquired of him about the way to Woodbury. The most direct route from the McCall farm to Woodbury is through Upper Cabot village and thence over west hill. It is about one mile farther to go from Upper to Lower Cabot and from there over west hill by the road on which the respondent was seen. ·

When questioned by the sheriff after the fire the respondent said that he hadn't been in Cabot for several years, except on one occasion when Mr. Brown took him to a store in Lower Cabot to make some purchases. They went directly to the store and directly home by automobile. He said that he hadn't seen Mr. McCall, Mrs. Alexander or Mrs. Anzelone for at least three years

and also contradicted the State's witnesses with respect to certain other matters which are immaterial.

■■ There was no other evidence in the case which was material on the question of the guilt of the respondent. Except for the fact that the buildings were destroyed by fire at the time alleged the State relied wholly upon circumstantial evidence to prove its case. Passing over the question whether the evidence would support a finding of incendiarism we consider whether there was evidence from which the jury could reasonably find the respondent guilty. That proof of guilt could be made by circumstantial evidence is not open to doubt, but to produce that result the circumstances proved must do more than create a mere suspicion of guilt, however strong. *State* v. *Foss,* 110 Vt. 453, 458, 8 Atl. 2d. 648; *State* v. *Rounds,* 104 Vt. 442, 449, 160 Atl. 249. The circumstances shown must exclude every reasonable hypothesis except that the respondent is guilty. *State* v. *Foss, supra; State* v. *Bean,* 77 Vt. 384, 403, 60 Atl. 807; *State* v. *Davidson,* 30 Vt. 377, 73 Am. Dec. 312. See, also, 16 C. J. 762, Sec. 1566 and 23 C. J. S. 149, Sec. 907.

■ Here there was no proof of malice, intent or motive. The State's case depends upon the evidence regarding the tracks, the respondent's presence on another road five miles from the fire some six hours thereafter and the fact that the respondent falsified when questioned by the officer. The presence of tobacco juice and urine near the footprints tended only to show that they were made by a person who had chewed tobacco and urinated and the other observations made regarding the foot tracks proved nothing as to his identity. But if this evidence had any value as against this respondent such value was destroyed by the State's evidence that the footprints were smaller than his footwear. His presence on the highway at the time and place shown and his falsifying to the sheriff have no tendency to prove that he made footprints smaller than his footwear. Both these facts are at least as consistent with other hypotheses as with the hypothesis of guilt of the crime charged.

■ Respondent's motion for a directed verdict should have been granted and it becomes unnecessary to consider other exceptions briefed by him.

*Judgment reversed, conviction and sentence set aside and respondent discharged.*