## State of Vermont v. Mitchell T. Bishop and Elery Jones

[ 238 A.2d 772 ]

December Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 6, 1968

*Hilton H. Dier, Jr.,* Deputy Attorney General, and *David B. Stackpole,* State's Attorney, for the State.

*Davis, Martin & Free* for the defendants.

**Smith, J.** Each of the two respondents was charged with arson in the second degree. The cases were tried together in the Lamoille County Court on February 13 and 14, 1967, and the jury returned a verdict of guilty against both respondents. On February 28, 1967, the motions of the respondents for a directed verdict of acquittal notwithstanding the jury verdict were heard and denied. This appeal is taken from the verdicts of guilty rendered by the jury.

Second degree arson is the wilful and malicious burning of any building or structure other than a dwelling house or the structures appurtenant thereto. 13 V.S.A. §503. The structure which these respondents were charged with burning was a shack located on Sterling Mountain, near Stowe, Vermont, used in connection with his logging operations by one Archie Hutchins, who was the complaining witness in the case.

■ "Motion of the defendants for directed verdict notwithstanding the verdict" could not have been granted. "In this State it has been held that a motion for a directed verdict cannot be granted after the case has been submitted to the jury, a verdict returned and the jury discharged." *Callahan* v. *Disorda,* 111 Vt. 331, 336, 16 A.2d 179, 181; *Shurtleff* v. *Udall,* 97 Vt. 156, 164, 122 A. 465. This being a criminal case, and in order to prevent any injustice to these respondents, we will treat the defendants' motion for a directed verdict as a motion to set aside the verdict as unsupported by the evidence.

■ The motion, treated in this way, calls upon us to view the evidence in the light most favorable to the State, and the effect of modifying evidence is to be excluded. *State* v. *Goodhart,* 112 Vt. 154, 155, 22 A.2d 151.

So viewed, the following factual situation is presented by the evidence adduced below. On October 30, 1966, Archie Hutchins found that persons unknown had ripped the plastic covering over one window in the tool shed owned by him in the Sterling Valley region of Stowe. Mr. Hutchins had in his car a two-way radio, and by means of this device he called Deputy Sheriff Clarence Hayford, whose vehicle was similarly equipped, to come to the scene.

Deputy Sheriff Hayford came to the scene, inspected the property and left. Hutchins decided to watch the shed from his car, which he parked some 150 to 200 yards away near an old horse barn on the property, from which the shed, as well as the road, was visible. The road upon which the shed was located was of the dead-end variety and came to a termination at a point a mile and half distant from the shack.

A considerable time passed, during which Hutchins passed the time by conversing with other radio owners. About 8:30 P.M. he saw a red and white. International Scout car go past his shack. Hutchins then called Deputy Sheriff Hayford by radio and Hayford stated he would come back.

About half an hour after this call, the red and white Scout car came down the road and turned in by the shed. Hutchins saw two men get out, not identifiable to him at that distance and at that time in the evening. After the men made several trips between the Scout and the shack, one of the men backed the Scout toward the highway. There was a ball of fire, and the shack went up in flames.

Meanwhile, in answer to the radio call from Hutchins, Deputy Hayford had parked his car on the Sterling Valley road about a mile and a half from the shack. While so parked, he received a call from Hutchins that the shack was on fire and that the red and white Scout was on its way down the road. Within a few minutes the red and white Scout appeared and was stopped by Deputy Hayford. He identified the two respondents; whom he knew previously, as the occupants of the car and observed that respondent Bishop's hair and beard were singed.

Having been informed by Hutchins that the fire was spreading from the shack into the woods, he did not detain or arrest the two occupants of the Scout at that time, testifying that he thought it more important at the moment to help Hutchins extinguish the fire, and that he would be able to pick up the respondents at a later time. Hayford and Hutchins did manage to keep the fire from spreading into the surrounding woodlands, but the shack which contained a quantity of gasoline and fuel oil was totally destroyed, together with its contents.

The thrust of the main arguments of the respondents here is that the State did not adequately prove the corpus delicti, nor by the required degree of proof establish that Jones and Bishop were the perpetrators of the fire. The contention of the respondents is that the evidence in the case being largely circumstantial, the State failed to

prove the cause of the fire, or that such fire, if incendiary, was set by the respondents by even a preponderance of the evidence, much less beyond a reasonable doubt.

The respondents here were charged with arson and the burden was on the State to prove that there was a burning; that the fire was incendiary and that the respondents wilfully and maliciously set fire to the building. 13 V.S.A. §503. If the evidence offered on the claimed arson was entirely circumstantial every reasonable hypothesis must be excluded except that the respondents were guilty. *State* v. *Perras,* 117 Vt. 163, 167, 86 A.2d 544.

The evidence of the State established that there were no electrical connections in the shanty that burned, no smoking had taken place in the shack, nor were there any open containers of any flammable material. The circumstances disclosed permitted the jury to infer beyond a reasonable doubt that the building did not catch fire in the way it did, and at the time it did, from some accidental or providential cause, but that such fire was incendiary. *State* v. *Teitle,* 117 Vt. 190, 206, 90 A.2d 562.

As against respondent Jones, the evidence as to his guilt adduced by the State was not merely circumstantial. It was the testimony of Hutchins, as well as of a Mr. Morrill, who was present, that a confrontation took place between Hutchins and Jones in Morrisville, Vt., some hours after the burning of the shack. In response to Hutchins' question "How come you burnt me out tonight" the reply of Jones was "That's to get even for stealing those chains off me." The reference made by Jones, according to the testimony, was to a previous claim by Jones that Hutchins had stolen certain logging chains belonging to him, which claim had resulted in bad feelings between them. No objection to the admission of this testimony was made by either Jones or Bishop.

This testimony of an admission of guilt on the part of Jones, as well as actual malice on his part, was not disputed or denied, as neither of the respondents offered any evidence, or took the stand in their own defense in the trial below.

We agree with the respondent Bishop that as to his part in the burning the evidence is purely circumstantial. Such circumstances include the fact that he was with Jones in the red and white International Scout on the day in question. The evidence is that this car was

the only vehicle on that part of the Sterling Valley road during that period of time, and that a vehicle of this description turned into the clearing where the shack was located in the early evening and that two men were seen going back and forth from the truck to the shack. This vehicle, and its occupants, left the scene of the fire just as the shack erupted into a ball of flame. Within minutes after the start of the conflagration, the red and white Scout was stopped by Deputy Hayford on the Sterling Valley road, about a mile and a half from the scene of the blaze, and respondent Bishop was identified as one of the two men in the vehicle. At this time, his hair and beard were observed to be singed.

██ The test here is whether the State introduced evidence fairly and reasonably tending to show the respondent Bishop guilty, or in other words, whether the jury, on the evidence would have been justified in finding the respondent guilty beyond a reasonable doubt. *State* v. *Perras, supra.* We think the evidence just recapitulated would justify a jury acting reasonably to find that respondent Bishop was a participant in the wrongful burning of the building here involved. The requisite wilfulness and malicious intent was established by the performance of the act charged. 2 Wharton's Criminal Law, Arson, Sec. 390, p. 7.

*The entry is "Judgment Affirmed."*