## State of Vermont v. Marcel A. Benoit

[392 A.2d 406]

No. 348-75

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed September 11, 1978

*William H. Sorrell,* Chittenden County State's Attorney, Burlington, for Plaintiff.

*James L. Morse,* Defender General, *Charles S. Martin,* Appellate Defender, and *Mary Reis,* Law Clerk (On the Brief), Montpelier, for Defendant.

**Daley, J.** The defendant was convicted in a trial by jury in the District Court of Vermont, Unit No. 2, Chittenden Circuit, on a charge of burglary in the nighttime of a gasoline station. He now appeals the trial court's denial of his motion for judgment of acquittal made at the close of the State's case. That the crime charged with all its requisite elements was committed is not disputed here. Rather, the claimed error rests on the proposition that the State's evidence, wholly circumstantial in nature, was insufficient to establish the defendant as the perpetrator of the crime. We agree and reverse accordingly.

To test the propriety of the trial court's denial of the defendant's motion for a judgment of acquittal, we determine whether the evidence, when viewed in the light most favorable

to the State, fairly and reasonably supports the jury's finding of guilt beyond a reasonable doubt. *State* v. *Bishop*, 127 Vt. 11, 15, 238 A.2d 772, 774 (1968). Where the case is entirely circumstantial, we further subject the evidence to a second test of strict scrutiny. "[T]he circumstances proved must do more than create a mere suspicion of guilt, however strong. . . . The circumstances shown must exclude every reasonable hypothesis except that the respondent is guilty." *State v. Goodhart,* 112 Vt. 154, 158, 22 A.2d 151, 153 (1941) (citations omitted).

The record below establishes the following facts. While driving home in the early morning hours of January 3, 1975, a part-time special officer of the Williston Police Department saw a single figure silhouetted by the lights of the gasoline station which was closed for the evening. He was, however, unable to perceive any further characteristics of the figure or its exact location inside or outside the station. Driving around the area, the officer noticed a car stuck in the snow on a nearby street, but did not see anyone in or around the car. Without getting out of his car to investigate on foot, the officer went home and called the State Police, reporting a possible breaking and entering of the gasoline station.

Two state troopers, responding to a radio dispatch at 1:18 a.m., arrived at the scene and found the station in total darkness. Shining a spotlight on the station, the troopers noticed a large broken window in one of the bay doors on the station's north side. Entering through this window, they further noticed a small pane of broken glass in a window comprised of several small panes joined by lattice work which stretched across the front of the station. The testimony was that this broken window was too small to admit someone the size of the defendant. On the floor of one of the bay areas of the station, the troopers found certain tools normally kept on a bench between a wooden door and a metal door. There was testimony that these tools were used to pry open the wooden door, which led to a storage area for petroleum products, and to attempt to break open the metal door. The analysis of these tools, however, revealed no fingerprints whatsoever. The only items missing from the station were

three sets of keys, which were not found in the defendant's possession.

The troopers proceeded to the snowbound car and discovered the defendant lying on his back underneath the passenger side of the automobile in an apparently unconscious condition. In response to questioning, the defendant claimed he had been drinking at a bar and had passed out in the snow. Although there was testimony of a slight odor of alcohol on the defendant's breath, none of the officers who observed the defendant at the scene believed that he was intoxicated. At first the defendant could not remember whom he had been with that evening, but subsequently and inconsistently stated that he had been with Michael Foster and another person named Rick, and then changed his story again to include two unknown girls among his companions. He also stated that at no time had he been near the station. When confronted with Michael Foster, whom the police had discovered passed out in the woods nearby, the defendant made further inconsistent statements, first denying ever having seen Foster and then admitting that earlier that evening Foster had been driving the car now lodged in the snowbank.

In a further search of the area surrounding the gasoline station, the troopers discovered two sets of tracks, one made by smooth-soled boots later found to match the footwear worn by Foster and a second made by rippled-soled boots later found to match the defendant's footwear. Both sets began in the immediate vicinity of the station. The smooth-soled tracks, indicating a pace that varied between walking and running, led to the spot where Foster was discovered, and the rippled-soled tracks, evidencing a walking pace, ended at the car under which the defendant was found.

Analysis of both pairs of boots indicated the presence of hydrocarbons, usually found in petroleum products used in gasoline stations, on the tops, sides and bottoms of only the defendant's boots. The extensive testimony indicated that the substance containing the hydrocarbons, which was caught in the grooves of the defendant's boots, could have been picked up by walking over the oily floor of the gasoline station. It was also possible, however, that the defendant picked up the

hydrocarbons by scraping his boots along the underside of the car under which he was found.

Circumstantial evidence is that proof offered of certain facts and circumstances from which the trier of fact may, by way of a process of rational inference, conclude that the ultimate facts in dispute existed or did not exist. *State* v. *Angelucci,* 135 Vt. 43, 45, 373 A.2d 834, 835 (1977); 1 Wharton's Criminal Evidence § 6 (12th ed. 1955). The evidence of the footprints and the hydrocarbons is certainly circumstantial evidence which supports a rational inference that it was the defendant who perpetrated the burglary, but it is not direct evidence that the defendant was ever in or touching the station. See *State* v. *Angelucci, supra,* 135 Vt. at 46, 373 A.2d at 835; *Woodmansee* v. *Stoneman,* 133 Vt. 449, 455, 344 A.2d 26, 29 (1975). The defendant's inconsistent statements likewise support an inference of guilt, *State* v. *Baker,* 115 Vt. 94, 97–98, 53 A.2d 53, 55 (1947); 1 Wharton's, *supra,* at § 143, but falsifications are not admissions of guilt and are not direct evidence that the defendant was at the scene of the crime at the time of its commission. See *State* v. *Goodhart, supra,* 112 Vt. at 158, 22 A.2d at 153. The record before us thus substantiates the trial court's determination below and the State's concession on appeal that this is a case based entirely on circumstantial evidence.

Evidence that is entirely circumstantial is not necessarily deficient provided that it complies with the strict test set in *State* v. *Goodhart, supra.* Although substantiating a theory of defendant's guilt, the State's evidence failed the test because it failed to preclude other theories consistent with defendant's innocence. Accepting the State's evidence as true, what we have is a defendant who went drinking with friends and ended up with his car embedded in a snowbank. He then walked to a nearby gasoline station which at some point that same night was burglarized. He walked partially around the station and then returned to his car where he managed to embed himself in the snow underneath. "It may be that the evidence raises a suspicion and possibly a strong one that the respondent was involved in the crimes charged. But as we have said before, mere suspicion, however strong, will not

supply the place of evidence." *State* v. *Boudreau,* 111 Vt. 351, 364, 16 A.2d 262, 267 (1940). The paucity of evidence in this regard requires us to hold that the trial court erred in denying the defendant's motion for judgment of acquittal, and we reverse accordingly.

*The judgment is reversed and the verdict is ordered set aside. Judgment is entered that the appellant is not guilty and is to be discharged from any confinement based on this charge.*