### State of Vermont v. Arnold J. Burclaff, Jr.

[404 A.2d 512]

No. 245-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed June 12, 1979

*M. Jerome Diamond,* Attorney General, and *Susan R. Harritt,* Assistant Attorney General, Montpelier, for Plaintiff.

*James L. Morse,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant.

Hill, J. The defendant, Arnold J. Burclaff, Jr., was tried by a jury in the District Court of Vermont, Unit No. 4, Orleans Circuit, and found guilty of a nighttime attempt to break and enter a dwelling house, in which personal property the subject of larceny was situated, with intent to commit larceny in violation of 13 V.S.A. § 1201. He made a motion for judg-

ment of acquittal at the close of the State's case. After it was denied, the defense rested without offering any evidence. Cf. *State* v. *Bressette*, 130 Vt. 321, 322, 292 A.2d 817, 818 (1972) (proceeding with trial after denial of motion for directed verdict of acquittal at close of State's case constitutes waiver of any issue raised by motion). On appeal, the defendant's only claim of error is the trial court's denial of this motion. We affirm.

On the evening of December 15, 1977, Mrs. Gretia Duquette was asleep in her house on Route 16 in Barton, Vermont. The house was in darkness. Shortly after 8:00 p.m., Mrs. Duquette was awakened by a noise. She saw two figures pass by her bedroom window; one was tall and one was short. They used a flashlight to illuminate her front porch and to look through a window into the house. Then, they moved to the rear of the house. When she heard the lock to the outer rear door drop to the porch floor, she turned on the lights and telephoned a neighbor. The neighbor called the police.

The police received the call at 8:23 p.m. Two state troopers responded by cruiser traveling east on Route 16. At approximately 8:42 p.m., they observed two men (one tall, one short) walking west alongside the road toward Barton village. The men were illuminated by a street light near the entrance to Crystal Lake State Park; the police identified the defendant as the tall man. As the cruiser passed, the two men stopped, turned, and watched it proceed east on Route 16. The defendant was carrying a rifle.

The Duquette residence is about one mile east of the entrance to Crystal Lake Park. On the evening in question, it was surrounded by fresh snow. No paths or driveways had been shoveled. When the troopers arrived they observed two sets of boot tracks in the fresh snow leading from the highway to the front porch of Mrs. Duquette's home. No other tracks of any kind were in the area. They found a cardboard box and a canvas sack on the front porch. These contained a variety of household objects.

One of the troopers followed the tracks from the front porch west around the house to the rear door. The eyehook to the outer rear door had been pulled off and the door forced open. The inner door was closed and locked. The officer con-

tinued to follow the two sets of tracks which left the rear door and headed through a field for about 500–600 yards. Over this distance the tracks were spaced at a distance suggesting a running movement. Veering back toward Route 16, the tracks displayed a pattern of normal movement. They continued in an unbroken manner to Route 16 and then west to the Crystal Lake Park entrance where earlier the troopers had observed the defendant and his shorter companion. The tracks displayed a stopping and turning action consistent with the movements made by the two individuals as the cruiser passed. There were no tracks in the area other than the continuous and connected tracks leading from the Duquette residence through the fields and down Route 16 to the Crystal Lake Park entrance. They maintained their clarity to the intersection of Routes 5 and 16 where, heading in the direction of the defendant's home, they became mingled with others.

The state troopers proceeded to the defendant's home. They advised him of his *Miranda* rights, and he agreed to answer their questions. The defendant acknowledged that he was present on Route 16 when the cruiser passed and stated that he had been hunting in Pageant Park, an area located half way between the Duquette residence and Crystal Lake Park. (Further investigation revealed that there were no tracks entering or leaving Pageant Park nor were there any in the vicinity other than the two sets leading away from Mrs. Duquette's home.) The troopers asked the defendant whether he owned the rifle that he was carrying on Route 16. He said yes but concedes that he produced a different one.

Returning to the Duquette residence, one of the troopers followed the footprints in the opposite direction, east from the house and about half a mile down Route 16. They led to the back door of the Brown residence which had been broken into and ransacked. The household objects earlier found on Mrs. Duquette's front porch had been taken from the Brown residence.

This was the state of the evidence when the defendant made his motion for judgment of acquittal.

■■ The sole issue raised by such a motion is whether the prosecution has introduced evidence fairly and reasonably tending to show the defendant's guilt, that is, whether

the jury on that evidence would be justified in finding guilt beyond a reasonable doubt. See Reporter's Notes, V.R.Cr.P. 29, at 117; *State* v. *Girouard,* 135 Vt. 123, 135, 373 A.2d 836, 844 (1977) ; *State* v. *Ciocca,* 125 Vt. 64, 73, 209 A.2d 507, 514 (1965). Other cases variously formulate the identical issue,[1] but our review persuades us that they are in accord with the well-expressed view of *Curley* v. *United States,* 160 F.2d 229 (D.C. Cir.), *cert. denied,* 331 U.S. 837 (1947).

> The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter.

*Id.* at 232–33 (quoted in 8A Moore's Federal Practice ¶ 29.06, at 29–31 (2d ed. 1978). See *State* v. *McSheffrey,* 131 Vt. 329, 333, 306 A.2d 702, 705 (1973). More particularly, "[t]he motion for judgment of acquittal *at the close of the government's case* implements 'the requirement that the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense.' " 2 C. Wright, Federal Practice and Procedure § 462, at 245 (1969) (emphasis added).[2]

---

[1] See, e.g., *State* v. *Angelucci,* 135 Vt. 43, 44, 373 A.2d 834 (1977) ("whether the State introduced evidence that would fairly and reasonably allow a jury to find the defendant guilty beyond a reasonable doubt") ; *State* v. *Perras,* 117 Vt. 163, 167, 86 A.2d 544, 546 (1952) ("there must be substantial evidence to make a case for the jury").

[2] It should be noted that V.R.Cr.P. 29(b) permits the trial court to reserve decision on a motion for judgment of acquittal made at the close of *all* the evidence and "give the jury a chance at acquittal without surrendering the judicial prerogative of reviewing the sufficiency of the prosecution's case." Reporter's Notes, V.R.Cr.P. 29, at 118. However, "[a] motion made at the end of the state's case

■ The appellant contends that we must reverse the trial court's ruling unless the evidence submitted by the prosecution is sufficient to exclude every reasonable hypothesis consistent with innocence. We have applied this strict standard to motions for judgment of acquittal only where the evidence against the accused is entirely circumstantial, see *State* v. *Benoit*, 136 Vt. 431, 433, 392 A.2d 406, 407 (1978), or when evidence of specific criminal intent is purely circumstantial and then only to that particular element of the offense. See *State* v. *McMann*, 133 Vt. 288, 290, 336 A.2d 190, 192 (1975). We decline to apply such strict scrutiny here because there is direct evidence that the defendant was present and participating in the acts alleged to constitute a crime. In such circumstances the only issue should be whether all of the evidence—whatever its character—would fairly and reasonably support a finding of guilt beyond a reasonable doubt.

■ The defendant does not contend that the acts complained of here, if done by someone harboring the intent to commit larceny, are insufficient to constitute an attempt to violate 13 V.S.A. § 1201. His argument is that the evidence submitted by the State is insufficient to establish either his participation, or, in the alternative, his participation with intent to commit larceny. We disagree.

The testimony of the police and Mrs. Duquette established a prima facie case of the defendant's participation. His footprints in fresh snow, visible in an unbroken pattern from the point of direct observation by the police to the scene of the crime, are direct evidence of his presence. And the absence of any footprints other than his companion's coupled with the testimony of Mrs. Duquette that the two individuals she saw were acting together is direct evidence of the defendant's participation. See generally McCormick on Evidence § 185, at 435–36 (2d ed. 1972).

The more serious question raised by the defendant is whether the State made a prima facie showing that he participated with the specific intent to commit larceny, "an essential element of the offense with which he was charged."

---

must be decided at that time because defendant should know the court's ruling before he decides whether to rest or put in his evidence." *Id.;* see 2 C. Wright, *supra.*

*State* v. *McMann, supra.* But, in our judgment, the defendant's surreptitious activity at the Duquette residence, the evidence linking him to the burglary at the Brown's, which was admitted without objection, cf. *State* v. *Howard,* 108 Vt. 137, 153, 183 A. 497, 504 (1936) (evidence of accused's participation in other offenses not admissible to prove felonious intent unless sufficient to make out a prima facie case), and his flight from the scene following discovery, cf. *State* v. *Jost,* 127 Vt. 120, 128, 241 A.2d 316, 322 (1968) (defendant's statements which might be construed as inconsistent with innocence will not cure an insufficiency in the evidence), sufficiently established a prima facie case of larcenous intent.

*Affirmed.*