### State of Vermont v. George F. Senner, III

[406 A.2d 378]

No. 204-78

Present: Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.

Opinion Filed September 10, 1979

*John A. Rocray,* Windham County State's Attorney, Brattleboro, for Plaintiff.

*Dorsch & Hertz,* Brattleboro, for Defendant.

**Billings, J.** This is an appeal from a conviction on an amended information charging the defendant-appellant (hereinafter the defendant) with possession of two or more ounces of marijuana with intent to sell, a felony under 18 V.S.A. § 4224(f)(1)(B), entered on a jury verdict of guilty. Pursuant to a stipulation of the parties, sentencing was postponed until disposition in this Court. We reverse.

The somewhat colorful facts of the case are not in dispute. On December 11, 1976, three local police officers were investigating an unrelated crime in the area of Dover. Their investigation took them to a house rented for a short period by the defendant and another individual. When the officers were met outside by one of several other people occupying the house, they expressed their desire to question the occupants in connection with their investigation. One officer suggested that they talk inside as it was cold out.

The occupant acquiesced, and all proceeded to the first room of the house, which was referred to during the trial as the living room. The officers again indicated that they wanted to ask some questions. Another male occupant then entered the living room from a rear bedroom through a second room, referred to at trial as the dining room, which connected to the living room via an open archway. At this point, one of the officers, apprehensive about his safety and that of his fellows, stepped through the archway to see if there were any more people. He observed instead a number of guns stacked upright against a wall of the room. Another officer followed the first into the dining room and stood by the guns while

the first officer looked into the bedrooms on that floor. In the course of his foray, he saw a small scale with white powder on the measuring pan and a number of plastic burlap-type bags with what appeared to be marijuana residue. When he returned to the living room, the officer standing by the guns showed him a paper shopping bag containing marijuana which he had found on the floor.

All of the persons then in the house were taken to the police station. Although the defendant's wife and baby were numbered among these, the defendant was not present. The officers obtained a search warrant based upon what they had found during their search of the premises, which they executed in the early evening of the same day. In the basement they found approximately three hundred pounds of marijuana, in bags of the type that had been found in one of the upstairs bedrooms. All of this physical evidence was introduced at the defendant's trial following the denial of his motion to suppress.

The defendant urges three grounds for reversal. He argues first that the original warrantless search violated his rights under the Fourth Amendment to the United States Constitution because the exploration of the second room was beyond the scope of any consent the occupants gave the police to be on the premises, *State* v. *Connolly*, 133 Vt. 565, 570–71, 350 A.2d 364, 368 (1975) ; see *United States* v. *Dichiarinte*, 445 F.2d 126, 129–30 (7th Cir. 1971), and was not justified by any of the very narrow exceptions to the requirement of a search warrant, *State* v. *Connolly, supra,* 133 Vt. at 571, 350 A.2d at 368; see *Vale* v. *Louisiana,* 399 U.S. 30, 34–35 (1970). Since the probable cause alleged as the basis for the warrant subsequently issued rested entirely on evidence turned up by the warrantless search, the defendant argues that the introduction of the products of the latter search violated his rights since it was fruit of the poisonous tree, *Wong Sun* v. *United States,* 371 U.S. 471, 484–85 (1963). The defendant secondly argues the insufficiency of the evidence to sustain his conviction, which he raised by motions for acquittal under V.R.Cr.P. 29(a) and (c) at the close of the State's evidence and following the jury verdict of guilty, respectively. The defendant lastly argues that the trial court acted

to deprive him of a fair and impartial trial by pointing out a grave defect in the prosecution's case, the lack of any testimony concerning whether there were regulated drugs in the house prior to the time that it was rented to the defendant and the other renting party, and by allowing the prosecution to recall a witness to testify to the absence of such drugs at that time.

We reach neither the constitutional issue concerning the warrantless search nor the question of the trial court's interference with the presentation of evidence, since we conclude that the case must be reversed, and judgment of acquittal entered, on the ground that the State relied entirely on circumstantial evidence to show the defendant's knowing possession of, and his intent to sell, the seized marijuana, without introducing evidence sufficient to exclude every reasonable hypothesis consistent with the defendant's innocence. State v. Angelucci, 135 Vt. 43, 373 A.2d 834 (1977) ; State v. Goodhart, 112 Vt. 154, 22 A.2d 151 (1941).

The State was unable to produce any direct evidence that the defendant was ever in possession, actual or constructive, of any of the marijuana found at the rented house. There was no direct evidence introduced to show that he even knew it was on the premises, much less that he intended to sell it. This much the prosecutor admitted when summing up the State's case to the jury following a full week of testimony and the introduction of physical evidence. In State v. Angelucci, supra, 135 Vt. at 45, 373 A.2d at 835, we noted that we have "consistently subjected verdicts founded upon circumstantial proof to a strict standard of scrutiny," and amplified that standard by quoting from State v. Goodhart, supra, 112 Vt. at 158, 22 A.2d at 153, as follows:

> That proof of guilt could be made by circumstantial evidence is not open to doubt, but to produce that result the circumstances proved must do more than create a mere suspicion of guilt, however strong. . . . The circumstances shown must exclude every reasonable hypothesis except that the respondent is guilty. (Citations omitted.)

It is true that the physical evidence of criminal activity at the rented house is great. The police found three hundred pounds of marijuana in the basement, eight pounds of marijuana in one of the bedrooms, small scales in another bedroom, fifty pound sacks containing marijuana residue, with markings indicating that they had come from Mexico, the shopping bag found in the dining room containing marijuana, a number of shotguns and other weapons, including a sawed-off shotgun, and a flight log containing the defendant's name, which indicated flights had been made between Mexico, Arizona (the defendant's domicile), and New Hampshire. This evidence amply supports the finding, made by the trial court in connection with its denial of the defendant's Rule 12(e) motion to dismiss for failure to establish a prima facie case, that the evidence "indicated the marijuana was kept for purposes of distribution and not for personal use."

The evidence connecting the defendant to this activity, however, is circumstantial, and does not meet the standard established by *Goodhart* and *Angelucci, supra.* There was testimony to the effect that the defendant rented motel rooms in Wilmington, Vermont, for himself and the others in his party on December 8, 1976; that the next day the defendant, along with another person, examined the rental house where the marijuana was found; that these two persons displayed a great degree of interest in the basement and, when the rental agent remarked that this was unusual since the parties were merely renting the dwelling for a short period, the defendant replied that the renting of the house was a joint venture; that there were no drugs in the basement of the house at the time it was rented; that there was no access to the basement except by a stairway to the living room; that the defendant was at the house twenty-four hours before the police found marijuana there; and that the defendant's wife and child were present when the marijuana was found. The police found no contraband in the defendant's bedroom, and offered no evidence connecting the defendant to any of the weapons seized.

The State, in its brief, did not indicate any further evidence tending to connect the defendant with the contraband found during his absence at the rented house. At oral

argument, the State added nothing, but rather urged the sufficiency of the evidence already described to support the conviction. We have searched the trial transcript in vain for any testimony that would tend to draw the net of circumstantial evidence more closely around the defendant.

■ Given the state of the evidence before the trial court, the prosecution failed to exclude several reasonable hypotheses consistent with the defendant's innocence. Granted that the evidence raises a very strong suspicion that these hypotheses are incorrect, strong suspicion has never been the standard of proof in a criminal prosecution under our system of law. As we said recently in *State* v. *Benoit,* 136 Vt. 431, 435–36, 392 A.2d 406, 408 (1978):

> It may be that the evidence raises a suspicion and possibly a strong one that the respondent was involved in the crimes charged. But as we have said before, mere suspicion, however strong, will not supply the place of evidence. *State* v. *Boudreau,* 111 Vt. 351, 364, 16 A.2d 262, 267 (1940).

In *Benoit,* where we reversed a conviction because the evidence did not meet the strict standard of *State* v. *Goodhart, supra,* the circumstantial evidence of guilt was, if anything, stronger than in the present case. The prosecution was for the burglary of a gas station. The police found the defendant in the vicinity of the station within a few hours of the crime. The defendant's boots had oil on them, and matched bootprints found near the station. The defendant gave conflicting statements concerning his presence and activities in the area.

■ In the instant case, the defendant was absent from the rented house for a period of as long as twenty-four hours, an ample time for the marijuana to have been brought in without his knowledge. He has not been shown to have been in the environs of criminal activity at all. There were seven adults besides the defendant residing at the house, all of whom were present within a much closer time to the searches and arrests than the defendant. We have held that the mere finding of illegally possessed goods on a person's premises without a showing that that person consciously pos-

sessed them will not justify an inference of guilt where many others had free access to the goods, *State* v. *Boudreau, supra,* 111 Vt. at 362, 16 A.2d at 266. This holding, taken together with the rule of law that mere association with people allegedly involved in criminal activity does not support an inference of involvement, see *State* v. *Dupaw,* 134 Vt. 451, 455, 365 A.2d 967, 969 (1976), and the lack of any direct evidence tending to establish the elements of the defendant's knowing possession or intent to sell, compels the conclusion that it was error to deny the defendant's motions for acquittal.

*The judgment is reversed and the verdict is ordered set aside. Judgment of acquittal is entered.*