## State of Vermont v. Ricky D. Larose

[415 A.2d 210]

No. 277-78

Present: Barney, C.J., Daley, Billings and Hill, JJ., and
Costello, District Judge, Specially Assigned

Opinion Filed April 9, 1980

Dissent Filed April 16, 1980

282

*David G. Miller,* Franklin County State's Attorney, and *Edward D. Fitzpatrick,* Deputy State's Attorney, St. Albans, for Plaintiff.

*James L. Morse,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, and *Steven P. Dunham,* Public Defender, St. Albans, for Defendant.

**Billings, J.** This is an appeal from a conviction on July 24, 1978, of a violation of 13 V.S.A. § 1201, for a burglary during the nighttime of June 13, 1978, in Enosburg, Vermont. The two issues presented are whether the evidence is sufficient to support the verdict and whether the State established that the search of the defendant's bedroom was made with his voluntary consent.

In the early hours of June 13, 1978, a store window was smashed. A woman living across the street heard the noise and went to her window. She saw an individual continue breaking glass and enter through the break. Leaving her window and descending a flight of stairs, the witness emerged into a parking area adjacent to her residence where she secreted herself behind a car. Shortly thereafter, the witness saw an individual leave the broken store window and head across the street. While he crossed the street two other persons joined him. From her position, the witness saw the three approach her from the street, but did not see their faces. After the shadows of these individuals passed her, the witness peered over the car in the direction the three shadows had gone. There, in the dim light she saw only two individuals, one of whom had turned to expose his face. This was the only time at which the witness was able to identify any of the three individuals who had crossed the street from the burglarized store area.

The witness stated that she recognized the individual who had exposed his face as a person other than the defendant, and that she was familiar with that person. She also stated that this person was not the individual whom she had seen

enter the nearby store. Moreover, the witness could not account for the disappearance of one of the three individuals. She did note that the person who broke into the store was shorter than the individual she identified and stated that the unidentified second person whose back she viewed from behind the car was shorter than the identified person. The defendant is shorter than the identified individual, but the witness could not say whether he was the individual who broke into the store.

The eyewitness testified that she could not and did not identify the defendant for the police as one of the three individuals she saw in the vicinity of the burglary. The police chief who arrested the defendant testified, however, that the eyewitness gave him "the name of one suspect that she knew and also helped . . . identify the second suspect involved." On cross-examination by the defense, however, the chief stated that the eyewitness had indicated to him that "one [of the suspects] she believed was the Larose boy living with" the identified individual. It was clear, however, that the eyewitness could not identify the defendant as one of the three she had seen near the scene of the crime at an informal and makeshift line-up conducted at the doorway of the defendant's apartment late on the night of the crime.

The other evidence which most strongly linked the defendant with the burglary is a set of sneaker prints made on a paper chart and counter top at the point of entry into the store which correspond with the treads on a pair of sneakers belonging to the defendant. These sneakers were found by police under defendant's bed at the apartment he shared with the identified individual and others.

Following the investigation of the scene of the crime, the police went to the apartment of the identified individual. It was without electric power and darkened. The occupants told the police that they had been swimming earlier in the evening and had been at home for the rest of the night. They also showed the police some of their shoes on request, but did not produce the sneakers in question. Upon request, the occupants refused to allow the police to search without a warrant. The chief informed them that he was going to get one and posted a guard at the front door of the apartment. No guard was posted on the fire escape at the rear of the

apartment. While the chief was gone, the guard heard "shuffling" going on inside the apartment. By the time the chief returned, the defendant and the identified individual had told the guard outside the door that the police could search the bedrooms. The chief then filled out consent to search forms, one of which the defendant signed.

A search of the defendant's bedroom revealed a pair of sneakers underneath his bed. Their treads corresponded, upon expert comparison, with the tread marks found at the burglarized store. Moreover, the sneakers were damp, as were the cuffs of a pair of pants also found in defendant's bedroom. On the basis of this evidence and the chief's observation that his own shoes and pants were dampened by the heavy dew near the store, the defendant was arrested. At trial there was also testimony that the defendant was seen an hour or two before the break-in barefooted.

The dispositive question before this Court is whether these facts are sufficient to support the guilty verdict. For the State to have proven its case it must have established that the defendant broke and entered the store in the nighttime with the intent to commit larceny or other felony. 13 V.S.A. § 1201. The State must have established each and every one of these elements.

Our review of the evidence is governed by the standards of *State* v. *Benoit,* 136 Vt. 431, 432–33, 392 A.2d 406, 407 (1978), in which Mr. Justice Daley stated for the Court as follows:

> To test the propriety of the trial court's denial of the defendant's motion for a judgment of acquittal, we determine whether the evidence, when viewed in the light most favorable to the State, fairly and reasonably supports the jury's finding of guilt beyond a reasonable doubt. *State* v. *Bishop,* 127 Vt. 11, 15, 238 A.2d 772, 774 (1968). Where the case is entirely circumstantial, we further subject the evidence to a second test of strict scrutiny. "[T]he circumstances proved must do more than create a mere suspicion of guilt, however strong. . . . The circumstances shown must exclude every reasonable hypothesis except that the respondent is guilty." *State* v. *Goodhart,* 112 Vt. 154, 158, 22 A.2d 151, 153 (1941) (citations omitted).

These standards require that this Court characterize the evidence linking the defendant to the store break-in. The State and the defendant are in agreement that most of the evidence is circumstantial. The State contends, however, that the police chief's admitted testimony that the eyewitness identified the defendant as one of the two individuals whom she saw after they walked by her place of concealment is direct evidence that the defendant broke and entered into the store.

 In order for evidence to be considered direct evidence of an element of a crime, it must, if believed, prove the element without inference of any other fact. "Circumstantial evidence is that proof offered of certain facts and circumstances from which the trier of fact may, by way of a process of rational inference, conclude that the ultimate facts in dispute existed or did not exist." *State* v. *Benoit, supra,* 136 Vt. at 435, 392 A.2d at 408.

 The testimony of the police chief on the eyewitness identification of the defendant in the parking area, if believed by the jury, is direct evidence that the defendant was one of two persons who walked from the street in front of the burglarized store into the adjacent parking area where the eyewitness was hiding. However, it is only circumstantial evidence that the defendant was the individual who broke and entered the store. In order for the jury to believe that the defendant did break and enter the store, it must have inferred from the presence of the defendant in the parking area and other evidence that he also was the person who broke into the store across the street, inasmuch as there is no evidence that he was identified in the process of committing the acts of breaking and entering. There was no direct evidence that the defendant did break and enter the store, even if the evidence is read in the light most favorable to the State, because the mere presence of a person near the scene of a crime does not establish that he participated in it. *State* v. *Mecier,* 126 Vt. 260, 262, 227 A.2d 298, 299 (1967). To the extent that *State* v. *Burclaff,* 137 Vt. 354, 404 A.2d 512 (1979), is inconsistent with this determination of whether evidence is direct or circumstantial, compare *State* v. *Benoit,*

*supra,* with *State* v. *Bourassa,* 137 Vt. 62, 399 A.2d 507 (1979, and with the rule in *State* v. *Mecier, supra,* concerning the significance of the proof of presence to the proof of participation in a crime, it is overruled.

■ The circumstantial evidence linking the defendant to the crime, therefore, must be strictly scrutinized to determine whether the circumstances shown exclude every reasonable hypothesis except that the defendant is guilty. This determination may be made by ascertaining whether each element of the offense can be found and attributed to the defendant by a permissible inference from established facts.

If the police chief's statement that the eyewitness identified the defendant is believed, then the jury could infer that the defendant was the individual who broke into the store or that he was one of two other persons who met the burglar after the crime. The facts that the defendant is shorter than the other individual identified and that the eyewitness believed the burglar to have been shorter than him does not alter this result. The eyewitness identification is of one of two persons only one of whom could have been the burglar on the facts of this case. On the testimony of the eyewitness and the police chief's recollection of her prior identification of the defendant, the facts of breaking and entering may have been established, but the defendant has not been identified with that conduct beyond a reasonable doubt.

The fact that the defendant's pants were damp about the cuffs may establish that he walked through a damp area the evening of the break-in, but it does not place him at the scene of the crime without a reasonable doubt. His pants could have been wet from his return from swimming earlier in the evening after the dew had formed.

The evidence which most likely places the defendant inside the store and connects him with the conduct of the individual whom the eyewitness saw break and enter the store are the sneakers and sneaker prints. There was expert testimony that the treads of the sneakers were distinctive enough for the expert to conclude that the sneakers found in the defendant's room made the print marks recovered at the point of entry into the store. The inference which the jury was required to

make was that the defendant, not some other person, was wearing the shoes at the time of the break-in.

■ There was evidence that the defendant was seen one or two hours before the break-in without shoes on. Furthermore, the sneakers were not found on the defendant, but under his bed in a search conducted after a period of unsurveyed "shuffling" in defendant's darkened apartment by occupants who all knew that the police were looking for shoes worn at the scene of the crime. From these facts the jury would be permitted a reasonable hypothesis that the defendant did not commit the break-in. The ownership of the shoes does not require the jury to infer that the defendant was wearing them at the time of the break-in.

Two cases which are analogous to the case at bar are *State* v. *Benoit, supra,* and *State* v. *Goodhart, supra.* In *Benoit,* the defendant was found beneath a car near the scene of a break-in at a service station. Tracks which were matched with the treads of the shoes the defendant was found wearing were located immediately adjacent to the point of the break-in. Moreover, his shoes had been stained by hydrocarbons of the sort one would find in a service station and on the underside of a car. This evidence did not exclude every reasonable hypothesis except that the defendant entered the station. Similarly, in *Goodhart,* the defendant was seen on a road to which tracks had been followed from the scene of an arson. It was established that there were chewing tobacco stains near the arson and that the defendant was a chewer. Furthermore, the tracks measured almost the same length as the defendant's boots. This evidence was not sufficient to exclude a reasonable hypothesis of innocence.

Benoit's shoes, although identified with him, could not unequivocally be linked with the unlawful entry. Similarly, Larose's shoes, although linked to the unlawful entry, cannot unequivocally be identified with him at the time of the break-in. In both *Benoit* and *Goodhart* the shoes of the defendant were linked to the vicinity of the crime, but the links created no more than very strong suspicions of guilt. Similarly, we cannot say that the State has established more than strong suspicion that the defendant Larose, rather than

one of his roommates, was wearing the inculpatory sneakers at the time of the crime.

This case is distinguishable from *State* v. *Bourassa, supra,* in which a police officer witnessed two unidentified individuals leave a burglarized building, one of whom he tracked with a dog from the point of exit to the point of arrest in nearby grass. This evidence excluded every reasonable doubt of guilt, because the defendant's scent was identified and traced from the scene of the crime to him and the path of flight was confirmed in part by the officer's visual observations of the defendant. No such closely woven circumstantial facts link the defendant here to the crime.

■ Therefore, since the State has failed to exclude every reasonable hypothesis except that the defendant is guilty, we must hold that the trial court erred in denying the defendant's motion for judgment of acquittal. We, therefore, need not reach the issue of consent to search.

*The judgment is reversed and the verdict is ordered set aside. Judgment is entered that the appellant is not guilty and is to be discharged from any confinement based on this charge.*

**Hill, J.** dissenting. Today the Court once again applies the so-called circumstantial evidence test to reverse a judgment entered on a jury verdict of guilty. I, for one, am now persuaded that that test should be abandoned. The addition, in cases based entirely on circumstantial evidence, of the requirement that the prosecution exclude every reasonable hypothesis consistent with innocence is, in my opinion, unwarranted, and rests, at best, on the most tenuous legal reasoning.

In a criminal prosecution, the State must prove guilt beyond a reasonable doubt, no more, no less. By further requiring a jury to be instructed that they must exclude every reasonable hypothesis consistent with innocence, the Court inhibits the jury from intelligibly determining what, based on their collective reasoning and experience, they believe to be a reasonable doubt. I see no good reason why we need further perplex the functioning of the jury by interjecting

this added element of uncertainty. For, as Professor Wigmore stated:

> [w]hen anything more than a simple caution and a brief definition is given, the matter tends to become one of mere words, and the actual effect upon the jury, instead of being enlightenment, is likely to be rather confusion, or, at the least, a continued incomprehension. In practice, these detailed amplifications of the doctrine have usually degenerated into a mere tool for counsel who desire to entrap an unwary judge into forgetfulness of some obscure precedent, or to save a cause for a new trial by quibbling, on appeal, over the verbal propriety of a form of words uttered or declined to be uttered by the judge. The effort to perpetuate and develop these elaborate unserviceable definitions is a useless one, and serves to-day chiefly to aid the purposes of the tactician.

9 J. Wigmore, Evidence § 2497, at 318–20 (3d ed. 1940).

The ostensibly higher burden of persuasion required in cases relying entirely on circumstantial evidence is based on the assumption that circumstantial evidence is less reliable and cogent than direct evidence. I find, however, that this assumption is highly questionable. There is nothing to suggest that as a general matter circumstantial evidence is not as strong as direct evidence. Indeed, a fact sworn to by a witness of questionable character is not as satisfactorily proved as a fact that is a necessary consequence of other facts sworn to by many credible witnesses. See *Commonwealth* v. *Harman*, 4 Pa. 269, 271 (1846). Yet under Vermont law the former evidence is assigned a greater probative value than the latter.

The propriety of assigning greater probative value to direct evidence than to circumstantial evidence has, over the years, been doubted and disputed by commentators and courts alike. See J. Wigmore, *supra*, § 26. In addressing whether a court need instruct a jury that where circumstantial evidence is involved every reasonable hypothesis consistent with innocence must be excluded, Mr. Justice Clark, speaking for a unanimous Supreme Court, stated:

There is some support for this type of instruction in the lower court decisions, . . . but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect . . . .

Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

*Holland* v. *United States*, 348 U.S. 121, 139–40 (1954) (citations omitted). Not to belabor the point, but rather to point out the pervasiveness with which like instructions regarding circumstantial evidence have been criticized by some of the most eminent jurists, I quote further.

The requirement seems to us a refinement which only serves to confuse laymen into supposing that they should use circumstantial evidence otherwise than testimonial. All conclusions have implicit major premises drawn from common knowledge; the truth of testimony depends as much upon these, as do inferences from events. A jury tests a witness's credibility by using their experience in the past as to similar utterances of persons in a like position. That is precisely the same mental process as when they infer from an object what has been its past history, or from an event what must have preceded it. All that can be asked is that the importance of the result to the accused shall demand a corresponding certainty of his guilt; and this is commonly and adequately covered by telling them that the conclusion shall be free from fair doubt. To elaborate this into an inexorable ritual, or to articulate it for different situations, is more likely to impede, than to promote, their inquiry.

*United States* v. *Becker,* 62 F.2d 1007, 1010 (2d Cir. 1933) (L. Hand, J.).

Had the Court weighed the evidence against this standard, I believe it would have required affirmance of the judgment. I therefore respectfully dissent.