### State of Vermont v. Richard Jay Sorrell

[432 A.2d 1188]

No. 176-80

Present: Barney, C.J., Larrow, Billings, Hill and Underwod, JJ.

Opinion Filed June 2, 1981

*Mark J. Keller,* Chittenden County State's Attorney, *James R. Crucitti,* Deputy State's Attorney, and *Jeffrey Cohen,* Law Clerk (On the Brief), Burlington, for Plaintiff.

*Martin & Paolini,* Barre, for Defendant.

**Underwood, J.** The defendant was charged, in District Court of Vermont, Chittenden Circuit, Unit No. 2, with the crime of armed robbery. 13 V.S.A. § 608(b). A plea of not guilty and an alibi defense were entered. Trial was by jury. At the close of the State's case the defendant moved for a judgment of acquittal on the ground that the State had failed to prove a prima facie case. The motion was denied. After the jury returned a verdict of guilty, the defendant moved for judgment notwithstanding the verdict. This motion was also denied and a judgment on the verdict issued. Defendant appeals from that judgment.

The question to be decided is whether the trial court erred in denying defendant's motions. The defendant contends that the State's evidence was insufficient, as a matter of law, to prove beyond a reasonable doubt that he committed the crime with which he was charged. We agree and reverse his conviction.

■■ The sole issue raised by a motion for judgment of acquittal is "whether, taking the evidence in the light most favorable to the State and excluding modifying evidence, the State has introduced evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt." *State* v. *Eaton,* 134 Vt. 205, 206, 356 A.2d 504, 505 (1976); V.R.Cr.P. 29. A judgment of acquittal should be granted, on motion by the defendant, when the evidence raises only a suspicion of guilt, or leaves it uncertain, or dependent upon conjecture. Suspicion, however strong, can never take the place of evidence. *State* v. *Guppy,* 129 Vt. 591, 594, 285 A.2d 717, 719 (1971).

Taking the evidence in the light most favorable to the State, the record discloses that on Sunday, November 18, 1979, the defendant spent most of the day, from 10:00 a.m. until 12:00 midnight, drinking. Between those hours he consumed a fifth of tequila and two to three six-packs of beer. He was visiting

and partying with friends on Conger Street in the Lakeside area of Burlington.

The defendant's whereabouts during that evening are well documented with the exception of the time span between 6:45 p.m. and 7:45 p.m. The alibi witness places the defendant in his apartment during this time, the defendant himself has no present recollection, and the other witnesses were not then at that apartment.

The defendant was wearing a dark blue wool hat and carrying a folding Buck knife in a case. By his own testimony he always carried a knife, and this one had a dark brown handle with gold on both ends. The blade was three inches long.

A witness with a rather cloudy or reluctant memory recalled that he might have seen a rifle next to the stove in the apartment where the defendant and Antoniak were visiting and drinking.

The defendant left his friend's apartment on two occasions to go across the street to use a telephone to call his girlfriend, once at 6:00 p.m. and again at 9:00 p.m.

The pertinent testimony about the 6:00 p.m. call went in part as follows:

Q. Do you recall there being a discussion about what Mr. Sorrell was going to do that evening?
A. Yes.
Q. And what do you recall Mr. Sorrell saying?
A. That he was . . . that he wanted to rob some place.
Q. Okay. Do you remember where he told you or what sort of establishment he was going to rob?
A. No.

. . .

Q. What do you remember Dick Sorrell telling you about his plans that night?
A. He had just . . . he was saying a whole bunch of stupid things.
Q. Included in the stupid things he was saying, did he talk about going out to rob some place?
A. Yes.
Q. And he expressed a plaza; is that correct?
A. Yeah.

Q. And he also mentioned a drug store?

A. No.

Q. But you do remember Ricky Sorrell talking about robbing some place and he mentioned a plaza?

A. Hmmm—hmmm.

The pertinent testimony about the 9:00 p.m. call between defendant and his girlfriend went in part as follows:

Q. And what did he tell you during the course of that second phone call?

A. Nothing.

Q. Why don't you tell the jury what you remember him telling you?

A. I asked him why he didn't call me back, and he said he had some business to take care of.

That same evening, at approximately 7:00 p.m., the City Drug Store in the Shelburne Road Plaza in Burlington was robbed by two men. According to the three eyewitnesses, all employees of the City Drug Store, one man wore a reddish or orange ski mask and the other wore a dark colored ski mask. Each had the mask pulled down over his face, with holes for the eyes and the mouth. The employees were unable to identify either of them and could only describe them in general terms as to height, age, build and the clothing they were wearing. They were both estimated to be in their early twenties. The one wearing the orange ski mask carried a rifle and the one wearing the dark ski mask carried a hunting knife which was described as having a blade from three to five inches long and a light tan handle.

According to the records of the Burlington Police Department, this was the only armed robbery occurring in the city that night, but of course, they had no record of any robberies which might have been committed in South Burlington, Essex, Shelburne or other neighboring municipalities.

It is approximately one mile from Conger Street to the City Drug Store.

■■ We concede that contradictory and equivocal testimony is for the jury to interpret, evaluate and resolve. There is a preliminary requirement, however, that there be some testimony in the case evidencing criminal conduct as

■■■■■■

charged. That testimony must be sufficient to justify a jury finding of guilt beyond a reasonable doubt. Even taken in the light most favorable to the State, the evidence still falls far short of the necessary standard and is too insubstantial to support a conviction. The quality of the State's proof must go beyond suspicion or mere conjecture. *State v. Hotte,* 129 Vt. 260, 263–64, 276 A.2d 492, 494 (1971).

■■ The defendant's motion for a judgment of acquittal for lack of a prima facie case against him should have been granted.

The defendant contends that the State's case rests, at best, entirely upon circumstantial evidence and that the State failed to disprove every reasonable hypothesis consistent with innocence as required under current Vermont case law. *State v. Larose,* 138 Vt. 281, 285, 415 A.2d 210, 212–13 (1980). In view of our holding in *State v. Olds,* 140 Vt. —, — A.2d — (1982), however, this argument is jejune.

Any proof in this case tending to establish the requisite elements of the offense of armed robbery is of the most tenuous sort and falls short of satisfying the burden of proof required of the State. Inferences drawn from provable facts are capable of bridging some gaps in the evidence but not one as wide and deep as the one in this case. See generally *State v. Angelucci,* 135 Vt. 43, 373 A.2d 834 (1977); *State v. Dupaw,* 134 Vt. 451, 365 A.2d 967 (1976); *Woodmansee v. Stoneman,* 133 Vt. 449, 344 A.2d 26 (1975); *State v. Goodhart,* 112 Vt. 154, 22 A.2d 151 (1941).

*Judgment reversed, conviction set aside and defendant discharged.*