# State of Vermont v. Bernard O. Mecier

[488 A.2d 737]

No. 82-099

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed October 12, 1984

Motion for Reargument Denied January 25, 1985

174

*James P. Mongeon,* Rutland County State's Attorney, Rutland, and *John J. Easton, Jr.,* Attorney General, *Susan Harritt,* Assistant Attorney General, and *James Carroll* and *Donna Hepler,* Law Clerks (On the Brief), Montpelier, for Plaintiff-Appellee.

*Sessions, Keiner & Dumont,* Middlebury, and *Andrew B. Crane,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Gibson, J.** Bernard O. Mecier was convicted of first-degree murder on January 14, 1982. A jury empaneled in Bennington Superior Court found him guilty of the "wilful, deliberate and premeditated killing" of Richard Serafin, also known as Reginald Regimbald, on October 17, 1975. 13 V.S.A. § 2301. His appeal from the judgment of the superior court is automatic under V.R.A.P. 3.

The ambitious briefs of counsel for both the State and defendant present a total of thirteen issues for our review. Included are numerous evidentiary issues, challenges to the jury instructions given by the court and arguments questioning the propriety of off-the-record conferences held in chambers. We do not address certain other arguments raised by defendant only in his reply brief; they are untimely. The judgment of the superior court is affirmed, and each issue will be identified and resolved following a factual recitation.

Taking the evidence in the light most favorable to the State, we piece together the events surrounding the murder of a man whose body was not discovered for several years.

In the late afternoon of October 17, 1975, the defendant, his brother Adolph Mecier, his cousin Mark Brown and the victim drove to the Mount Carmel Road in Chittenden to go "deer-jacking"—taking deer at night with the aid of a light. The four men took a twelve-gauge shotgun, a .22 caliber semi-automatic rifle and a bow with arrows.

The trip was organized by defendant who drove his mother's car to a remote logging road. Defendant stopped the car at one point to relieve himself, and Brown and defendant both left the car. At this time defendant told Brown that he intended to kill Reginald because Reginald was going to go to the police concerning a robbery in which both he and defendant had been involved. They then reentered the car, and defendant drove to a pull-off on the side of the road where a town snowplow had been left.

The defendant asked Reginald to get out and help him lift the plow to gauge its weight; defendant said he thought he could sell it to someone. Reginald, who was sitting in the right front passenger seat, got out of the car, and defendant exited from the driver's side. As Reginald began to walk toward the plow, defendant pulled a gun from inside his jacket and began to shoot at him. Reginald was wounded in the shoulder, after which he tried to get back into the car but was pushed out by Adolph who was in the back seat. He then ran up the road, chased by defendant who was still shooting, and eventually collapsed in the road. Defendant then "finished him off" by shooting him repeatedly in the head with the .22 rifle. At this point all the men were out of the car, and the victim's body was dragged from the road and covered with brush.

The next spring, defendant went back to the scene and destroyed the body by cutting it apart, strewing the bodily parts and burying the head. In 1977, a boot was found containing the bones of a human foot. Subsequent investigation, conducted with the assistance of defendant's father, Bernard W. Mecier, turned up another boot and the skeleton of a torso in 1981. Various other items of evidence, including a knife holder and belt buckle, were also discovered among the remains. These items were identified at trial as belonging to Reginald.

Mark Brown, Adolph Mecier and defendant's father all were given immunity by the State in order that they might testify at trial. Numerous witnesses, including Reginald's former wife, testified to admissions made by the defendant concerning the crime. Defendant told several people that he had shot Reginald and also told them details that substantially corroborated Brown's testimony as to pertinent events.

The theory of the defense was that Mark Brown, not defendant, shot Reginald. The defense elicited testimony from Pasquale Patori and Morris Jones that Mark Brown had told them that he shot Reginald. Both witnesses, however, admitted they felt that Brown was only bragging.

After completion of the trial, the defense moved for a new trial based upon newly discovered evidence. Three new witnesses had come forward subsequent to trial to whom Brown had also confessed to the murder. The trial court believed that the information was inadmissible hearsay, and that, in any event, it was merely cumulative. The motion for a new trial was denied.

We divide the issues raised into three general categories: (1) those in which defendant must show plain error; (2) those issues properly raised below in which the defense must prove general error; and (3) those claims challenging the constitutionality of certain conferences held in chambers.

## I. *Plain Error*

The first series of arguments made on appeal involve alleged errors that were not objected to or otherwise raised at trial. Under most circumstances, such errors are not properly before us for review. *State* v. *Welch*, 136 Vt. 442, 444, 394 A.2d 1115, 1116 (1978) ; *State* v. *Morrill*, 127 Vt. 506, 511,

253 A.2d 142, 145 (1969). Under a narrow exception to that rule, certain plain errors, even though not initially preserved for review, will be considered on appeal if they are so grave and serious as to strike at the very heart of a defendant's constitutional rights or adversely affect the fair administration of justice. *State* v. *Boucher*, 144 Vt. 276, 282, 478 A.2d 218, 222 (1984); *State* v. *Moran*, 141 Vt. 10, 20, 444 A.2d 879, 884 (1982); V.R.Cr.P. 52(b). We have made it clear, however, that plain error will be found only in a rare and extraordinary case. *State* v. *Morrill, supra,* 127 Vt. at 511, 253 A.2d at 145.

Defendant briefed nine arguments on appeal that were not properly preserved for review, claiming plain error in the following respects:

(1) the trial court's instruction to the jury that Mark Brown's out-of-court confessions to Pasquale Patori and Morris Jones could only be used for impeachment purposes and not as substantive evidence;

(2) the court's excluding, as hearsay, evidence that Mark Brown had admitted to possession of the murder weapon to a third person;

(3) the prosecution's direct examination of Mark Brown about his own prior statements at a 1981 inquest, deposition and meeting with police in what defendant characterizes as eliciting "prior consistent statements" to improperly bolster Brown's testimony;

(4) the prosecution's alleged improper vouching for the credibility of Mark Brown;

(5) the trial court's instruction to the jury as to the prosecution's relationship to its witnesses;

(6) the trial court's instruction on witness credibility;

(7) the testimony of two witnesses as to the believability of confessions made to them by Mark Brown and the defendant;

(8) the trial court's failure to include in its charge an adequate instruction on the essential elements of the victim's death and the causation of death;

(9) the court's alleged failure adequately to distinguish between first- and second-degree murder in its charge to the jury.

After review of the trial transcript and careful analysis of each legal issue propounded, we conclude that none of the alleged errors meet the strict standard imposed by V.R.Cr.P. 52(b). There has been no plain error in this case.

## II. *General Error*

The following two issues were, at least in part, properly preserved for review by adequate objection at trial. Because the trial court had "a fair opportunity to consider, evaluate and rule upon such questions," *State* v. *Kennison,* 135 Vt. 238, 240, 373 A.2d 556, 558 (1977), they will be reviewed for general error.

### A.

During the testimony of defendant's father, certain controversial testimony was elicited. First, the father testified that he had no knowledge of Reginald's murder until he was told by Bonnie Janoski, another witness, that she *thought* defendant had killed Reginald. Second, he testified that his brother Richard told him the same. Third, during the same direct examination and in an unresponsive answer to a carefully worded question, he blurted out that his brother Richard told him that defendant had confessed to Richard. Only the first statement was properly objected to. Defendant contends that all of these statements were inadmissible hearsay, that both Janoski and Richard Mecier told defendant's father defendant had confessed to them.

We believe defendant has overstated his argument. The father's first two statements contained nothing to the effect that defendant had actually confessed to Janoski and Richard Mecier—only the third contained this information. The first statement was allowed by the court because it was nonhearsay, not being admitted for the truth of Janoski's belief. The testimony was admitted to show the father's state of mind or motivation for forty or fifty visits that he made later to the scene of the crime. The testimony explained his subsequent actions and was not offered for its truth. McCormick's Handbook of the Law of Evidence § 249, at 589–90 (E. Cleary 2d ed. 1972). The second statement would also fall under the same rule.

■ Defendant also contends that these first two statements were only admitted for a limited purpose and that the jury was not sufficiently instructed as to that fact. The offer of proof made by the prosecution clearly stated that the testimony was not offered for its truth but only to show "what was in Mr. Mecier's mind when he took action later on." The court responded: "We will take the answer for that limited purpose only." Although it might have been better practice for the court to have instructed the jury more fully, defense counsel requested no such limiting instruction. In the absence of such a request, we will not find reversible error.

■■ The father's third statement was, in fact, improper hearsay. Hearsay implications against an accused are not admissible and should be excluded because they are based upon statements by persons who are not under oath and not subject to cross-examination. *State* v. *Ovitt*, 126 Vt. 320, 326, 229 A.2d 237, 241 (1967). Richard Mecier, from whom defendant's admission allegedly came, was not called as a witness at trial and, therefore, could not be confronted. However, since no objection was registered at the time the testimony was given, defendant seeks again to invoke the plain error standard. Although this unresponsive answer was hearsay, its admission was not plain error. There was substantial other evidence garnered against the defendant: eyewitness accounts as well as numerous other admissions that were properly admitted. The admission of this testimony was cumulative and was not so prejudicial as to warrant reversal under the plain error standard.

### B.

Two and one-half months after denial of post-trial motions and sentencing, defendant filed a second Motion for New Trial based upon newly discovered evidence. Three witnesses, who had not testified at trial, came forward to state that Mark Brown had told them he killed Reginald. Although the motion for new trial contained other issues as well, defendant's only argument on appeal from the denial of the motion concerns the testimony of these witnesses. Defendant argues that the standard established in *State* v. *Jackson*, 126 Vt. 250, 252, 254–55, 227 A.2d 280, 282, 283–84 (1967), has been met and that a new trial should have been granted.

▉▉ A motion for a new trial, V.R.Cr.P. 33, is a matter for the discretion of the trial court and, absent a showing of abuse or the withholding of discretion, its decision will not be reversed. *State* v. *LeBeau*, 144 Vt. 315, 319, 476 A.2d 128, 130 (1984) ; *State* v. *Dezaine*, 141 Vt. 335, 338, 449 A.2d 913, 914 (1982). If the basis for the motion is newly discovered evidence, (1) it must be material and have been discovered since the trial, (2) it must be truly new and not merely undiscovered because of lack of diligence, (3) it must be of such character that it will give reasonable assurance that it will work a different result upon a retrial, and (4) it must not be merely cumulative or only of impeaching effect. *State* v. *Jackson, supra.* This standard was recently reaffirmed. *State* v. *Dezaine, supra,* 141 Vt. at 338, 449 A.2d at 914; see also *State* v. *Berard,* 134 Vt. 220, 222, 356 A.2d 514, 515–16 (1976). This test is a stringent one. *State* v. *Dezaine, supra,* 141 Vt. at 338, 449 A.2d at 914–15.

▉ The trial court denied the motion because the new testimony was cumulative to that of Morris Jones and Pasquale Patori and was only "impeaching testimony." The testimony of the new witnesses is evidence of the same kind and upon the same point; it is merely cumulative. Finally, we cannot say that this evidence, if presented, would "probably change the result if a new trial is granted." *Id.* at 338, 449 A.2d at 914. There was considerable evidence engendered against defendant, including the testimony of eyewitnesses, corroboration of that testimony by others, numerous admissions by defendant and a great deal of circumstantial evidence. There was no abuse of discretion in the denial of defendant's motion.

## III. *Proceedings Held In Chambers*

The last two issues concern whether certain conferences held on defense motions and on the jury charge should have been recorded and conducted in public rather than in chambers.

### A.

A conference upon defendant's motions to dismiss, to disqualify the state's attorney, and upon the validity of the immunity given to Brown and Adolph Mecier was held off the

record in chambers. The purpose of the conference was to determine whether a full evidentiary hearing was required. The court found it was not. The prosecution did not attend, no testimony was presented and defendant made no objection to the informality of the conference. The charge conference held for the purpose of reviewing jury instructions with both counsel was also not recorded. No request for a court reporter was made at this conference by either party.

Defendant argues that the lack of a transcript in these proceedings deprives him of effective assistance of counsel on appeal because counsel will be unable to review the entire record for plain error. He alleges that his right to effective assistance under the Sixth and Fourteenth Amendments, as well as under Articles 4 and 10 of Chapter I of the Vermont Constitution, has been infringed.

Although it is a rule in federal courts that all criminal proceedings be held on the record, 28 U.S.C. § 753 (b), the absence of a stenographer even there is not per se reversible error. *United States* v. *Alfonso,* 552 F.2d 605, 620 (5th Cir.), *cert. denied,* 434 U.S. 857 (1977). The Vermont Rules of Criminal Procedure, however, do not require that hearings on all motions and conferences be recorded. Rule 12 (g) does require that motions to dismiss for lack of a prima facie case and status conferences be heard on the record. Rule 17.1 (b) mandates that a pretrial conference be recorded. Rule 47, pertaining to motions, however, contains no such requirement nor does Rule 30, which outlines the procedure to follow in requesting jury instructions.

In alleging a violation of the Sixth and Fourteenth Amendments as well as Articles 4 and 10 of Chapter I of the Vermont Constitution, defendant relies upon *Hardy* v. *United States,* 375 U.S. 277 (1964) ; *United States* v. *Selva,* 559 F.2d 1303 (5th Cir. 1977) ; and *Gaskins* v. *United States,* 265 A.2d 589 (D.C. 1970). He also cites several other state and federal cases.

A review of these cases reveals that they require a verbatim transcript of the trial on the merits. *Hardy* v. *United States, supra,* required, in an in forma pauperis appeal, "a transcript of the testimony and evidence presented by the defendant and also the court's charge to the jury, as well as the testimony and evidence presented by the prosecution." 375 U.S. at 282.

In *United States* v. *Selva, supra,* 559 F.2d at 1305, a transcript of closing arguments was required where new counsel represented defendant on appeal. See also *United States* v. *Gregory,* 472 F.2d 484, 486 (5th Cir. 1973) (transcript of voir dire and opening and closing statements required where new counsel represented defendant on appeal) ; *State* v. *Bizette,* 334 So. 2d 392, 394 (La. 1976) (motion for acquittal denied and new trial ordered where tape recorder malfunction was not due to bad faith on part of state). In *Gaskins* v. *United States, supra,* on application of new appellate counsel, the court found that "the better practice would be to order transcript of all pretrial proceedings in which substantial and articulable legal issues were resolved against appellant." 265 A.2d at 593.

In light of the fact that the only purpose for the off-the-record conference was to determine the need for an evidentiary hearing, that defendant's counsel was present throughout the conference, that the court made its ruling on the record, and that defendant has been unable to demonstrate any prejudice, we are unable to find an error so egregious that it " 'strikes at the very heart of defendant's constitutional rights,' " and, thus, no plain error. *State* v. *Boucher, supra,* 144 Vt. at 282, 478 A.2d at 222 (quoting *State* v. *Welch, supra,* 136 Vt. at 445, 394 A.2d at 1116). With respect to the charge conference, defendant had full opportunity at the close of the charge to place any objections on the record; there was no violation of V.R.Cr.P. 30 or of defendant's constitutional rights and no plain error. We agree with the reasoning of *Gaskins,* however, that it is better practice to record all such proceedings—especially in a serious felony matter such as this. We recommend this practice to the trial courts.

### B.

The motions to dismiss and to disqualify the prosecution discussed above were heard in chambers rather than in open court, and defendant argues that this procedure violated his right to a public trial under the Fifth, Sixth and Fourteenth Amendments and Article 10, Chapter I of the Vermont Constitution. This argument is based upon the proposition that public scrutiny is basic to a fair trial and essential to due process.

He claims his attorney had no right to waive his right to a public trial, that it is a personal right and requires an affirmative waiver by defendant himself.

The conference involved here was later summarized by the court in a Statement of Proceedings. As stated earlier, the conference was held to determine whether defendant's motions would require a full, on-the-record evidentiary hearing. The court did not allow the prosecution to attend the conference and only permitted the moving party to discuss, in general terms, the type of evidence it possessed. No evidence of specific acts or statements was allowed; such evidence, the trial court stated, would only be taken on the record. After hearing the general allegations, the court determined that there were insufficient legal grounds for disqualification, even if the allegations were proved. The court went on to say, however, if the matters raised on the motion became an issue during trial, a hearing would be held at that time. Defendant never raised the issue again.

The public trial guaranty exists primarily to prevent the courts from becoming "instruments of persecution." *In re Oliver,* 333 U.S. 257, 270 (1948). Public opinion has been thought to be "an effective restraint on possible abuse of judicial power." *Id.* Other reasons for holding trials in public also exist. Witnesses are encouraged to be more truthful, and other people with relevant information, as yet unknown to the parties, may become aware of the proceedings and make themselves available to testify. Additionally, the openness of trials allows spectators to learn about the operation of the judicial system and acquire confidence in its remedies. 6 J. Wigmore, Evidence § 1834, at 435–38 (1976).

"Preliminary conferences have traditionally been held not to be a part of the trial and not required to be in open court." *People* v. *Kirkpatrick,* 70 Ill. App. 3d 166, 173, 387 N.E.2d 1284, 1288 (1979) (citing 21 Am. Jur. 2d *Criminal Law* § 260; *State* v. *Pullen,* 266 A.2d 222 (Me. 1970); *Hayes* v. *United States,* 296 F.2d 657 (8th Cir. 1961), *cert. denied,* 369 U.S. 867 (1962); *People* v. *Teitelbaum,* 163 Cal. App. 2d 184, 329 P.2d 157 (1958), *cert. denied,* 359 U.S. 206 (1959)).

Although there are cases requiring open pretrial criminal proceedings based upon Sixth Amendment guarantees, see, e.g., *United States* v. *Cianfrani,* 573 F.2d 835, 846–54 (3d Cir.

1978) (pretrial suppression hearing), recent cases in the First Amendment area suggest that there is no unqualified constitutional right, at least on the part of the public, to open pretrial proceedings. See, e.g., *Waller* v. *Georgia*, — U.S. —, —, 104 S. Ct. 2210, 2215 (1984); *Gannett Co.* v. *DePasquale*, 443 U.S. 368, 391, 392 (1979); *Herald Association, Inc.* v. *Ellison*, 138 Vt. 529, 531, 419 A.2d 323, 325 (1980).

In addition to constitutional provisions, V.R.Cr.P. 56(b) provides:

> All trials *upon the merits* shall be conducted in open court and so far as convenient in a regular courtroom. All other acts or proceedings may be done or conducted by a judicial officer in chambers . . . . (Emphasis added.)

It is clear that Rule 56 requires only that trial itself be held in open court—the rule imposes no such requirement, however, upon a proceeding such as this.

■ Although this Court has stated in the civil context that "the general rule is that trials should be public, with chamber proceedings the exception . . . ," *Sunday* v. *Stratton Corp.*, 136 Vt. 293, 306, 390 A.2d 398, 405 (1978), after scrutinizing the nature of the proceeding in this case, we find no error.

■ The conference did not involve the taking of testimony from witnesses but merely offers of proof by counsel. The judge ruled on these offers as a matter of law on the record while assuring counsel that an evidentiary hearing could be conducted at a later date, if necessary. We, therefore, can see no prejudice to defendant and find no abuse of discretion by the trial court.

*Affirmed.*

### On Motion for Reargument

**Gibson, J.** Defendant has moved for reargument on the issue of prosecutorial misconduct. The issue was not addressed in the opinion because it was not timely raised, having been presented only in defendant's reply brief.

In his motion, defendant contends that he did raise the issue in his initial brief. A review of that brief discloses, however,

that defendant's comments about the conduct of the prosecutors were made in support of his argument that the trial court erred by holding a conference on several substantial matters off the record. The issue of prosecutorial misconduct was, in fact, briefed and presented for our consideration only in defendant's reply brief.

Defendant urges that he could not have adequately briefed the issue initially because the trial judge had not yet filed his Statement of Proceedings* concerning the off-the-record conference. Defendant points to a letter in the printed case giving notice that he would have to supplement the printed case when the Statement of Proceedings was filed.

We are satisfied that defendant could have included the issue of prosecutorial misconduct in his initial brief. Defendant's claim of prosecutorial misconduct centers around an inquest which preceded the trial. The inquest transcript was available to counsel prior to trial and prior to the preparation of his initial brief. It is clear from the Statement of Proceedings eventually filed by the trial judge that no evidence was taken and no rulings were made during the off-the-record, chambers conference. The Statement of Proceedings was not essential to the presentation of his claim. Further, although defendant indicated to the Court a need to supplement the printed case, at no time did he seek an enlargement of time for filing a brief on any issue. See V.R.A.P. 26(b) (time for doing any act prescribed by the rules may be enlarged "for good cause shown").

Defendant suggests that, even if his briefing of the issue was untimely, we should "review the record in the interests of justice." V.R.A.P. 3(b). We have done so and are unable to find any instance in which the alleged misconduct of the prosecutors prejudiced defendant or "touched the trial itself." *State* v. *Hohman*, 138 Vt. 502, 507, 420 A.2d 852, 855–56 (1980).

*The motion for reargument is denied.*

---

* A Statement of Proceedings is a procedure authorizing the trial court under V.R.A.P. 10(c) to supplement the record when certain matters have been heard off the record or when a transcript is unavailable.