# State of Vermont v. Robert L. Kennison

[546 A.2d 190]

No. 84-283

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes,*  JJ.**

Opinion Filed August 7, 1987

Motion for Reargument Denied October 2, 1987

Motion to Stay Mandate Denied May 3, 1988

---

* Justice Hayes was present for oral agreement but did not participate in this decision.

*Helen V. Torino,* Franklin County State's Attorney, St. Albans, for Plaintiff-Appellee.

*Martin and Paolini,* Barre, for Defendant-Appellant.

**Hill, J.** After a trial by jury, the defendant appeals his conviction on two counts of aggravated assault and raises five issues for resolution by this Court. We affirm.

## I.

Defendant first contends that his state and federal constitutional rights to counsel were violated when the trial court issued a post-arraignment nontestimonial order for a blood sample without giving defense counsel notice of, nor an opportunity to be heard on, the application. The undisputed sequence of events with respect to this issue, as it appears from the record before this Court, is of some importance.

On November 14, 1983, the State applied for, and subsequently received, a nontestimonial identification order from the lower court pursuant to V.R.Cr.P. 41.1[1] to draw blood from the defendant, who was represented by counsel. Although notice was not given to defense counsel of the application, reasonable notice was given to him prior to the execution of the order as required by V.R.Cr.P. 16.1(a)(2).[2] Now defendant, for the first time, argues that there was error in the application process, while at the same time conceding that he failed to move to suppress the evidence gathered during the execution of the nontestimonial identification procedure — namely, the blood sample.

---

[1] V.R.Cr.P. 41.1(a) provides that an "order . . . may be issued by a judicial officer upon request of a law enforcement officer . . . ." V.R.Cr.P. 41.1(c) provides that the "order shall issue only on an affidavit or affidavits sworn to before the judicial officer . . . ."

[2] V.R.Cr.P. 16.1(a)(2) states that "[r]easonable notice of the time and place of any personal appearance of the defendant required for the [purpose of taking a blood sample] shall be given by the prosecuting attorney to the defendant and his attorney."

█ It is well established law that any objections to evidence seized pursuant to V.R.Cr.P. 41.1 should be raised through a motion to destroy or suppress.[3] V.R.Cr.P 41.1(1). Moreover, this Court has made it clear that " '[t]he duty to exclude objectionable data lies squarely upon the shoulders of defense counsel.' " *State* v. *Kasper*, 137 Vt. 184, 190, 404 A.2d 85, 89 (1979) (quoting *United States* v. *Castenada*, 555 F.2d 605, 610 (7th Cir. 1977)). Further, if grounds to suppress are known to the party prior to trial, a motion to suppress must be raised pretrial. V.R.Cr.P. 12(b)(3). In the instant case, no motion to suppress defendant's blood sample was made at any time, despite defense counsel's knowledge of the order before it was executed, and that the blood sample was damning evidence of defendant's guilt of the aggravated assaults.

█ Under most circumstances, this Court is not bound to address issues raised on appeal "that were not objected to or otherwise raised at trial." *State* v. *Mecier*, 145 Vt. 173, 177, 488 A.2d 737, 740 (1984); V.R.Cr.P. 52(b). Thus, we will not consider defendant's claims that his state and federal constitutional rights to counsel were violated unless he can establish the existence of plain error. *Mecier*, 145 Vt. at 178, 488 A.2d at 741.

We are not persuaded that the use of evidence derived from defendant's blood sample ordered taken in an ex parte hearing was "plain error" which would compel review by this Court. Specifically, the defendant urges that the granting of the State's application under Rule 41.1 without notice to counsel and an opportunity to be heard violated his right to have counsel present during all critical stages of the criminal proceedings against him, as guaranteed by the Sixth Amendment of the U.S. Constitution[4] and Chapter I, Article 10 of the Vermont Constitution.[5]

---

[3] We are unpersuaded by defendant's argument that this issue was preserved for appellate review in his motion to recuse and transfer. That motion expressly stated that the ex parte granting of the prosecution's Rule 41.1 application was "not an issue" until the judge who had granted the order was rotated back to Franklin District Court.

[4] The Sixth Amendment states that: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.

[5] Chapter I, Article 10 provides, in pertinent part: "That in all prosecutions for criminal offenses, a person hath a right to be heard by himself and his counsel . . . ." Vt. Const. ch. I, art. 10.

It is axiomatic that plain error is that error which is " 'so grave and serious as to strike at the very heart of a defendant's constitutional rights or adversely affect the fair administration of justice.' " *State* v. *Messier*, 146 Vt. 145, 158, 499 A.2d 32, 42 (1985) (quoting *State* v. *Mecier*, 145 Vt. at 178, 488 A.2d at 741). While defendant is correct in asserting that the right to counsel is a fundamental right, and that the denial of that right strikes at the very heart of the state and federal constitutional rights to counsel, he is incorrect in claiming that the right to counsel is constitutionally mandated at a nontestimonial identification procedure such as the one here. The United States Supreme Court and this Court have both noted that the taking of nontestimonial identification evidence — such as blood — is not a "critical stage" at which the right to counsel attaches. *United States* v. *Wade*, 388 U.S. 218, 227-28 (1967); *State* v. *Howe*, 136 Vt. 53, 63-64, 386 A.2d 1125, 1131 (1978). The *Wade* court reasoned:

> [Preparatory steps in the Government's investigation such as analyzing of] fingerprints, blood sample, clothing, hair [are not] critical stages at which the accused has the right to the presence of his counsel. Knowledge of the techniques of science and technology is sufficiently available, and the variables and techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses . . . . The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial.

*Wade*, 388 U.S. at 227-28.

In addressing the same issue presented here — the validity of a Rule 41.1 order which was granted ex parte and without notice to defense counsel — this Court, in *Howe*, examined defendant's claim under both the Sixth Amendment and Chapter I, Article 10 of the Vermont Constitution. The Court reasoned that: "[i]f, as *Wade* holds, the preparatory steps of actually taking physical evidence are not 'critical stages' of the proceedings, it would seem to follow that the procedures seeking authority for such taking, necessarily prior to the actual taking, are also not

'critical.' We so hold." *Howe*, 136 Vt. at 64, 386 A.2d at 1131. Given the identical nature of the claim presented in *Howe*, and its sound rationale, we are compelled to decide this case similarly. Accordingly, we hold that the ex parte granting of a Rule 41.1 order for a taking of a blood sample does not violate defendant's right to counsel as guaranteed by the Sixth Amendment, and Chapter I, Article 10 of the Vermont Constitution, and therefore is not plain error.

## II.

Defendant next contends that his state and federal constitutional rights to compel evidence in his own behalf[6] were violated when the trial court excluded testimony regarding other people who had talked about being interested in robbing the victims in this case. Additionally, defendant claims error in the prosecution's closing argument. We address these claims in the order presented.

## A.

■ At trial the defense attempted to introduce the testimony of a public defender, who was initially assigned, and later withdrew, from defendant's case. The defense sought to establish that the defendant was not the individual who had stabbed the two victims, the "Greenwood brothers." At trial, the public defender was called as a defense witness and asked the following question: "Was there a time at which you became aware of a scheme to rob the Greenwood brothers that did not involve [the defendant]?" The public defender refused to answer the question on the basis of the attorney-client privilege. Defense counsel then asked the court, in front of the jury, "to order him to answer the question." The court refused, basing its decision on V.R.E. 502 and 512, and instructed the jury to disregard the question.

Defendant asserts that the court committed error when it refused to compel an answer from the public defender without first requiring him to meet his burden of establishing the existence of

---

[6] The constitutional right to compel evidence on one's behalf is guaranteed by both the Sixth Amendment of the U.S. Constitution and Ch. I, Article 10 of the Vermont Constitution.

the attorney-client privilege.[7] Since this Court has not addressed this specific issue, we are guided by the rule applied by the Second Circuit in *United States* v. *Stern*, 511 F.2d 1364 (2d Cir.), *cert. denied*, 423 U.S. 829 (1975). The court there held that "[t]he burden of establishing the existence of an attorney-client relationship rests on the claimant of the privilege." *Id.* at 1367.

In order for a claimant to succeed on his claim of privilege, he is obliged to prove that he falls within the scope of that privilege. *Id.*; see also 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 503(a)(1)[01] (1986). Vermont Rule of Evidence 502(b), which sets forth the general rule of privilege in Vermont, states in part:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, . . . .

V.R.E. 502(b).

In this instance, proper invocation of the privilege required an offer of proof by the claimant of the privilege, here the public defender witness, that the response sought by defense counsel was a "confidential communication" within the meaning of V.R.E. 502(b). The public defender, however, made no showing that his answer would reveal a privileged communication. Without his offer of proof, we are left in the dark as to whether the public defender properly claimed the attorney-client privilege.

We can only guess as to whether his response would have revealed a confidential communication between him and a client. "When this Court is left in a position where it must speculate as to the basis upon which the trial court reached its decision, we will refuse to so speculate." *Roy's Orthopedic, Inc.* v. *Lavigne*, 142 Vt. 347, 350, 454 A.2d 1242, 1244 (1982). The claimant of the attorney-client privilege has the burden of proving that he falls within the ambit of the privilege, and the trial court's failure to request that showing was error.

---

[7] We will assume that the public defender was asserting the privilege on behalf of a client other than the defendant. Otherwise, the defendant could have waived the lawyer-client privilege. See generally V.R.E. 502(c).

The remaining question is whether this error necessitates reversal. Defendant claims he was denied his right to present evidence in his own behalf as guaranteed by the state and federal constitutions. The Sixth Amendment to the U.S. Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favour . . . ." while Chapter I, Article 10 of the Vermont Constitution guarantees a criminal defendant the right "to call for evidence in his favor." However, both the federal and state rights of compulsory process are mandated only where the witnesses to be called will offer testimony which is competent, relevant and material to the defense. *Washington* v. *Texas*, 388 U.S. 14, 23 (1967); *State* v. *Kelly*, 131 Vt. 582, 588, 312 A.2d 906, 909 (1973). "The burden is on the defendant to show that . . . materiality." *State* v. *Ahearn*, 137 Vt. 253, 265, 403 A.2d 696, 704 (1979).

The defense sought to establish that the defendant was not the individual who committed the aggravated assaults. Consequently, this became an issue in the case. However, in his offer of proof defense counsel made only one, nonspecific and conclusory statement about the proposed testimony of his witness, the public defender. The defense counsel's generalization did not sufficiently establish the materiality of the testimony. Accordingly, we hold that the defendant's state and federal constitutional rights to present evidence on his own behalf were not violated, rendering any error committed harmless. See V.R.Cr.P. 52(a).

### B.

The defendant next claims error in a comment made by the prosecution in closing argument. Defendant urges that the prosecutor's reference during closing argument to one of the victims' drinking habits was improper, given that the trial court had rejected a defense attempt to introduce similar evidence during trial. Specifically, defense counsel tried to attack the credibility of the victim, by introducing evidence of his drinking habits. The court held some, but not all, of the evidence inadmissible. In closing argument, however, defense counsel once again brought up the issue of intoxication of one of the victims:

> Why would [the Greenwoods] say that [the defendant] was the one who did it if he didn't do it? . . . I would suggest to you as to why. First of all, I would suggest to you that per-

haps at least Hollis [Greenwood] was intoxicated. And that that would affect his ability to proceed . . . . He said he had something to drink. He said he had three beers before going to bed. He had told somebody else before something different. Maybe his ability to remember . . . can be questioned.

In rebuttal, the State addressed the intoxication issue:

Let me see if I can answer some of the questions that [defense counsel] has raised. Talking about Hollis [Greenwood] . . . he told you he had six beers. He drank three of them and saved the next three. Nothing inconsistent about that . . . There was no panic, there was no intoxication. The man was in bed getting his night's rest before he got up for 7:00 a.m. work, a job that he's held for 12 to 13 years. You don't hold a job 12, 13 years coming in with a hangover.

■ It is a well-established rule that in closing arguments, "[t]he prosecution [is] permitted to reply [to the defendant's closing] in rebuttal." V.R.Cr.P. 29.1. Moreover, this Court has specifically held that comments made by the State in retaliation to defense counsel's closing arguments are properly within the scope of rebuttal. *State* v. *Kasper*, 137 Vt. at 210, 404 A.2d at 99. The prosecution's reference to the victim's drinking habits was well within the acceptable boundaries for a proper rebuttal in closing argument. We find no error.

## C.

■ Defendant next argues that the trial court improperly excluded the proffered testimony of a defense witness named Robbie Hemond. One of the defense's main strategies in attempting to cast reasonable doubt over the State's case was to point the finger of guilt at someone other than the defendant. The defense alleges their target was a woman named Robin Wetherby. During the trial, the defense called witness Robbie Hemond to the stand to testify that, "[a]t some point in time," Robin Wetherby had approached both Hemond and another male and asked them if they wanted to make money by "threaten[ing] to kill somebody with a knife." This testimony was offered by defense counsel under V.R.E. 404(b), as well as to impeach Robin Wetherby's previous testimony. The State objected, and the judge sustained the objection based on V.R.E. 403, and did not allow her to testify.

The judge explained that the Hemond testimony would "confuse the issues or mislead the jury," and in accordance with V.R.E. 403, must be excluded.

In excluding the Hemond testimony, the trial court properly balanced the risk of confusing issues and misleading the jury against the defendant's state and federal constitutional rights to present exculpatory evidence. While evidence is admissible to show "proof of motive," V.R.E. 404(b), it is inadmissible where it would "confuse the issues and mislead the jury." V.R.E. 403. Hemond's offered testimony that a statement was made by Robin Wetherby in early 1984 regarding the possibility of robbing someone other than the Greenwoods was not probative to establish that Robin Wetherby might have had a motive to assault the Greenwoods in September, 1983. Robin Wetherby's statement made several weeks before this trial was simply too far removed in time and circumstances to the Greenwood assaults in September, 1983, to be admissible. The certain effect of such a statement would have been to confuse the issues and mislead the jury. The trial court properly deemed the testimony inadmissible under V.R.E. 403, and thus, defendant had no constitutional right to present it. See *Kelly*, 131 Vt. at 588, 312 A.2d at 909.

## III.

■ Defendant's last major argument is that the trial court erred in denying defendant's motion for judgment of acquittal because the evidence demonstrated his inability to form the requisite specific intent under the aggravated assault statute, 13 V.S.A. § 1024. In defining the specific intent required under § 1024, this Court has stated that the "[defendant must be shown to have] acted with the conscious object of causing serious bodily injury or that he acted under circumstances where he was practically certain that his conduct would cause serious bodily injury." *State* v. *Blakeney*, 137 Vt. 495, 501, 408 A.2d 636, 640 (1979). The State, therefore, bore the burden of proving defendant's specific intent, a necessary element of the crime of aggravated assault, beyond a reasonable doubt. See *In re Winship*, 397 U.S. 358, 364 (1970); *State* v. *Messier*, 145 Vt. 622, 625, 497 A.2d 740, 741 (1985).

At the close of the State's case, the defendant moved for judgment of acquittal, challenging solely the State's evidence on the element of intent in light of testimony elicited during trial on de-

fendant's intoxication and strange behavior during the night in question. The trial court denied the motion. Defense counsel renewed the motion at the close of defendant's case, noting that "I feel compelled to renew the motion even though I feel my client's testimony certainly refutes the grounds I made it [on]." The court again denied the motion. During the charge conference, defense counsel objected to the court's suggestion that a diminished capacity instruction be given.

The sole issue raised by a motion for judgment of acquittal is whether, taking the evidence in the light most favorable to the State and excluding modifying evidence, the State has introduced evidence fairly and reasonably tending to show the defendant's guilt beyond a reasonable doubt. *State* v. *McBurney*, 145 Vt. 201, 204, 484 A.2d 926, 928 (1984).

Defendant argues that the State failed, as a matter of law, to prove beyond a reasonable doubt defendant's specific intent to cause bodily injury to another with a deadly weapon. Or, stated differently, defendant argues that the trial court should have ruled that, as a matter of law, a reasonable doubt had been raised concerning defendant's specific intent, in light of the testimony that defendant had "acted funny" and "looked . . . drunk" on the night in question, and that the issue should not have gone to the jury.

Taking the evidence in the light most favorable to the State, there was "contradictory and controverted testimony" on the issue of defendant's mental capacity for "the jury to interpret, evaluate and resolve." *State* v. *Sorrell*, 139 Vt. 648, 651, 432 A.2d 1188, 1190 (1981). This Court has held that where there is evidence in the case of defendant's intoxication, "it [is] for the jury to determine the effect on the [defendant's] mental processes and whether his mental capacity was so diminished as to prevent him from forming the requisite felonious intent." *State* v. *D'Amico*, 136 Vt. 153, 156, 385 A.2d 1082, 1084-85 (1978). This Court has also held that in order that a conviction be supported, there must be some testimony in the case evidencing criminal intent as charged. "That testimony must be sufficient to justify a jury finding of guilt beyond a reasonable doubt." *Sorrell*, 139 Vt. at 652, 432 A.2d at 1190. Although there was some testimony that the defendant did "not know what he was doing," which the jury could have believed, they chose, instead, not to believe it. There was ample evidence on which they could have concluded that the

defendant possessed the requisite specific intent to cause serious bodily injury, and was, therefore, guilty beyond a reasonable doubt.

*Affirmed.*