**STATE of Vermont v. Scott LANGDELL**

[989 A.2d 556]

No. 08-360

¶ 1. December 14, 2009. Defendant appeals from his conviction of burglary fol-

lowing a jury trial in Lamoille District Court. Defendant argues that the State failed to produce enough evidence with regard to the intent element of this offense and that the jury instructions on this element were confusing and prejudicial. We affirm.

¶ 2. Defendant was discovered in the basement of a residence located at 625 Route 15 in Johnson, Vermont, in the early morning hours of January 31, 2008. Upon hearing "someone . . . in the basement hollering," the two residents called 911. Defendant remained in the basement until police arrived, and one of the residents testified, "I don't believe that he could find his way out." At around the same time that the 911 call was made concerning defendant's presence in the 625 Route 15 basement, the Lamoille County Sherriff's Department also received a complaint of a burglary alarm going off at an antique shop located at 23 Foote Brook Road, a location within 200 yards of the Route 15 residence.

¶ 3. Two officers were called to the scene. The first officer testified that he removed defendant from the basement and immediately detected an odor of alcohol. The officer noticed that defendant's "eyes were red and bloodshot and he was unsteady on his feet, swaying." Apparently because of defendant's problems with balance, the officer testified that "a couple of times I had to reach out and grab his arms so he wouldn't fall." The officer asked defendant whether he had consumed any alcohol, to which defendant responded, "I've had a few." The officer also observed that defendant was not wearing shoes and instead was wearing only boot liners with no tread. The officer questioned defendant about what prompted him to enter the basement, and defendant "stated that he wanted to know what he did wrong and that his truck had run out of gas and he couldn't understand why I was taking him into custody." Defendant was subsequently taken into cus-

tody and brought to the Lamoille County Sheriff's Department.

¶ 4. Upon investigation, officers discovered defendant's vehicle pulled over to the side of the road and observed smoke coming from the vehicle, apparently from a lit cigarette that had been left smoldering in it. Officers also discovered footprints leading from the car to an antique shop located across the road at 23 Foote Brook Road. There are two buildings that make up the shop (a barn and farmhouse), and both contain antique merchandise. Damage was done to both buildings. The glass panel to a french door of the barn had been smashed, apparently with a large rock. In the barn, there was broken merchandise strewn on the floor. Drawers of cupboards, dressers, and chests were open and merchandise was spilling out of them. One of the owners of the shop testified that "there were several items that had been opened and shifted around. There were numerous glass items of various kinds . . . and different bits had fallen and been broken." There were also footprints leading from the barn to the farmhouse part of the store. The front window of the farmhouse was smashed and the entryway was cluttered. The owner of the store testified that "multiple items from the right-hand side of the shop were strewn on the floor." Though there was obviously damage done to both the buildings and merchandise, the owners reported nothing missing. Footprints were also observed leading from the farmhouse across the street to the basement door of 625 Route 15, where defendant was subsequently apprehended.

¶ 5. Defendant was charged with unlawful trespass, unlawful mischief, and burglary. During the trial, defendant moved to dismiss all counts pursuant to Rule 29 of the Vermont Rules of Criminal Procedure. With respect to the burglary charge at issue on appeal, defense counsel argued that the count should be dismissed "on the intent of it" (presumably

referring to an argument that the specific intent element of burglary was not met). The court denied the motion. At the close of arguments, the court gave a jury instruction, including the details of the elements of all three counts, to which neither party objected. The jury found defendant guilty of all three counts. This appeal — which involves only the burglary conviction — followed.

¶ 6. On appeal, defendant argues that: (1) the evidence presented at trial was not sufficient to establish that defendant possessed the intent to commit larceny; therefore, the burglary charge should not have been submitted to the jury; and (2) the jury instruction on the intent element of the burglary charge was so confusing as to amount to plain error. We address each claim in turn.

I.

¶ 7. We first address defendant's claim regarding the sufficiency of evidence to support the intent element of the burglary charge. At the close of evidence, defendant moved for acquittal of all three counts, claiming that there was simply not enough evidence on which to convict him. See V.R.Cr.P. 29(a). On appeal, defendant challenges only the court's denial of his Rule 29 motion with regard to the burglary charge. Defendant argues that the evidence produced by the State did not support his conviction on the burglary count because it did not prove beyond a reasonable doubt that defendant had the specific intent to commit larceny. According to defendant, because nothing was missing from the antique shop, coupled with the fact that defendant was obviously very much intoxicated at the time of his entry into the store, the State's evidence of open drawers and broken merchandise was not enough to prove intent and was too speculative to go to the jury. We disagree.

¶ 8. We review denial of a defendant's motion for acquittal de novo, considering "whether the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." *State v. Ellis*, 2009 VT 74, ¶ 21, 186 Vt. 232, 979 A.2d 1023 (quotation omitted). Evidence that leaves "guilt uncertain or dependent upon conjecture is insufficient." *State v. Robar*, 157 Vt. 387, 391, 601 A.2d 1376, 1378 (1991) (quotation omitted); see also *State v. Lemay*, 2006 VT 76, ¶ 11, 180 Vt. 133, 908 A.2d 430 (asking whether the evidence presented by the State "sufficiently and fairly supports a finding of guilt beyond a reasonable doubt" (quotation omitted)).[*]

¶ 9. Defendant was convicted under 13 V.S.A. § 1201(a), which states that "[a] person is guilty of burglary if he or she enters any building or structure knowing that he or she is not licensed or privileged to do so, with the intent to commit a felony, petit larceny, simple assault or unlawful mischief." One of the essential elements of this offense is the existence of a specific intent — here, to commit a larceny. To support a conviction where specific intent is an element of the offense, we have held that there must be some testimony in the case evidencing criminal intent and that such "testimony must be sufficient to justify a jury finding of guilt beyond a reasonable doubt." *State v. Sorrell*, 139 Vt. 648, 652, 432 A.2d 1188, 1190 (1981); see also *State v. Savo*, 139 Vt. 644, 646, 433 A.2d 292, 293 (1981) (noting

---

[*] In his brief, defendant assumes that we will review the denial of his Rule 29 motion under a plain error standard of review because the issue was not properly preserved at trial. We note, however, that because defendant's Rule 29 motion came at the close of evidence we need not employ plain error review and will review the denial of the Rule 29 motion under the standard outlined above.

that with regard to the crime of burglary, the "[i]ntent to commit a larceny at the time of entry, like the other elements of the crime, must be proven beyond a reasonable doubt"). "Intent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence." *State v. Cole,* 150 Vt. 453, 456, 554 A.2d 253, 255 (1988).

¶ 10. Here, though nothing was missing from the antique shop, the State presented evidence of smashed doors and windows, merchandise strewn on the floor, and open drawers, cupboards, dressers, and chests with merchandise spilling out of them. Bootliner footprints in between the two buildings that make up the antique shop indicated that defendant forcibly entered the first building in which merchandise was stored, rifled through drawers, cupboards and dressers, and then forcibly entered a second building in which merchandise was stored and did the same. The State also presented evidence that it was unlikely that defendant's car had run out of gas (as he had claimed) and that the more likely scenario was that he had intentionally parked the car across from the antique shop.

¶ 11. From this evidence, the jury could infer that by breaking the door late at night defendant attempted to enter the shop undetected, that after rummaging through various drawers and other places defendant was unable to find anything to steal at the first building, and that defendant continued to the second building in hopes of better luck there. Further, the fact that nothing was actually stolen is not dispositive of the intent element; circumstantial evidence of disturbed merchandise or valuables may indicate an intent to steal. See *State v. Ingerson,* 2004 VT 36, ¶ 8, 176 Vt. 428, 852 A.2d 567 (concluding that evidence that defendant broke a window in the back of a building to conceal his presence coupled with obvious damage to a safe located inside the building

provided the jury with enough evidence to infer that defendant decided to enter the building with the intent to steal something); *Westmoreland v. State,* 636 S.E.2d 692, 694 (Ga. Ct. App. 2006) (concluding that jury may infer intent when DVD player had been disconnected and DVDs were moved or disturbed even though nothing was missing; *State v. Vortisch,* 763 So. 2d 765, 768 (La. Ct. App. 2000) (concluding that evidence of displaced merchandise is enough to sustain verdict that defendant intended to steal). The trial court, therefore, correctly denied defendant's motion for acquittal, as the State introduced sufficient evidence to convince a reasonable juror, beyond a reasonable doubt, that defendant decided to enter the antique shop intending to steal merchandise or money.

¶ 12. We note that, contrary to defendant's assertions, the situation here is distinguishable from the situation we addressed in *Savo,* 139 Vt. at 646-47, 433 A.2d at 293. In *Savo,* we determined that submission of a burglary charge to the jury was plain error because the only evidence the State produced on intent was the fact that the defendant, who was obviously intoxicated, had broken a window and then proceeded to hide in a restaurant restroom. We concluded that breaking and entering alone does not evidence a specific intent to steal. *Id.* Importantly, in *Savo,* no merchandise had been disturbed and there was no evidence upon which to draw the inference that the defendant was looking for something to steal. Here, there was other circumstantial evidence — including evidence that defendant was searching for merchandise or money — other than the breaking and entering itself, indicating that defendant entered the antique shop intending to steal.

¶ 13. Defendant also argues that evidence of his obvious intoxication precluded the State from meeting its burden on the intent element. Evidence may be

presented that voluntary intoxication resulted in a defendant's inability to form the intent necessary to commit a specific intent crime. *State v. Kinney*, 171 Vt. 239, 243, 762 A.2d 833, 837 (2000) ("When specific intent is an element of a crime, evidence of either voluntary or involuntary intoxication may be introduced to show that the defendant could not have formed the necessary intent." (quotation omitted)). The mere imbibing of alcoholic beverages, however, is not enough to negate intent. See *Heideman v. United States*, 259 F.2d 943, 946 (D.C. Cir. 1958) ("Drunkenness, while efficient to reduce or remove *inhibitions*, does not readily negate *intent*."). Moreover, where there is conflicting evidence on this point, it is for the jury to determine the effect of intoxication on a defendant's mental processes and whether his mental capacity was so diminished as to prevent him from forming the requisite intent. See *State v. Kennison*, 149 Vt. 643, 652, 546 A.2d 190, 196 (1987) (rejecting defendant's claim that the issue of intent should not have gone to the jury based on the existence of "contradictory and controverted testimony on the issue of defendant's mental capacity for the jury to interpret, evaluate and resolve" (quotations omitted)).

¶ 14. Though defendant presented evidence of his intoxication, the evidence was not so overwhelming as to justify taking away the question of intent from the jury. The odor of alcohol emanating from defendant and defendant's obvious unsteadiness and confusion must be weighed against all of the evidence presented (e.g., evidence that drawers and cupboards were rifled through). It was up to the jury to weigh this evidence and determine whether defendant had the requisite intent. We addressed a similar argument in *Kennison*, 149 Vt. at 652, 546 A.2d at 196. The underlying crime at issue in *Kennison* required specific intent to cause bodily injury to another with a deadly weapon, and the defendant presented testimony that he had "acted funny" and "looked . . . drunk" on the night of the crime. *Id*. We rejected the defendant's argument that the State failed, as a matter of law, to prove beyond a reasonable doubt the defendant's specific intent. *Id*. Instead, we found that taking the evidence in the light most favorable to the State, there was "contradictory and controverted testimony" on the issue of the defendant's mental capacity for "the jury to interpret, evaluate and resolve." *Id*. Here, though defendant produced evidence of his intoxication, there was ample evidence on which the jury could have concluded, beyond a reasonable doubt, that he possessed the requisite specific intent to commit larceny.

## II.

¶ 15. Defendant next argues that the jury instruction regarding the specific intent element of the burglary charge was so misleading as to amount to plain error. Defendant contends that: (1) the detailed discussion of the elements of larceny amounted to a confusing "instruction within an instruction," and (2) the language used to describe larceny conflated the act of throwing a rock through a glass door with the element of intent to commit larceny.

¶ 16. Because defendant did not make a timely objection to the trial court's charge, our review is necessarily limited to plain error. *State v. Viens*, 2009 VT 64, ¶ 22, 186 Vt. 138, 978 A.2d 37. We have held that "[p]lain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Bain*, 2009 VT 34, ¶ 18, 185 Vt. 541, 975 A.2d 628 (quotation omitted).

¶ 17. When evaluating jury instructions, we necessarily consider the instructions in their entirety "to determine if

they sufficiently guided the jury and did not have a prejudicial impact on their deliberations." *State v. Jones*, 2008 VT 67, ¶ 23, 184 Vt. 150, 955 A.2d 1190. Moreover, "[i]f the jury charge as a whole breathes the true spirit and doctrine of the law, we will uphold it." *Id.*; see also *State v. Pelican*, 160 Vt. 536, 539, 632 A.2d 24, 26 (1993). The essential inquiry, therefore, is whether the charge "undermines our confidence in the verdict." *State v. Jackowski*, 2006 VT 119, ¶ 4, 181 Vt. 73, 915 A.2d 767.

¶ 18. As discussed above, under 13 V.S.A. § 1201(a), the crime of burglary requires a specific intent to commit a crime. Thus, in addition to the elements of burglary, it follows that a jury will need to know the elements of the crime a defendant is alleged to have intended to commit. See *State v. Smith*, 479 A.2d 814, 818 (Conn. 1984) (though finding no plain error in the trial court's failure to recite the elements of the crimes the defendant was alleged to have intended to commit, court noted that "[t]he better practice would have been to instruct the jury on the statutory names and definitions of specific crimes for which there was sufficient evidence of an intent to commit").

¶ 19. Defendant first argues that the court's inclusion of the elements of larceny within its jury instruction regarding the burglary charge amounted to an impermissible and confusing "instruction within an instruction." With regard to the burglary charge, the jury instructions first set out the elements of burglary and the burden of proof the State must meet:

> Again, the State must prove each of the essential elements of this offense beyond a reasonable doubt. . . . [T]he essential elements are as follows: That [defendant] entered the barn. When [defendant] entered the barn, he knew he was neither licensed nor privileged to do so, and at the time of the entry [defendant] intended to commit a larceny.

The district judge then went on to describe the elements of larceny:

> The last essential element in this offense is that at the time of entry [defendant] intended to commit a larceny. The essential elements of larceny are that [defendant] stole money or property of the owner or person in lawful possession by an unlawful taking, and that the money or property was taken away from the actual or constructive possession of the owner or person in possession. That [defendant] intended to deprive the owner or person in lawful possession of this money or property currently and that the stolen money or property had a value — monetary value. . . . The third element is that the money or property was taken away from the actual or constructive possession of the owner or person in lawful possession. . . . The fourth element is that [defendant] intended to deprive the owner or person in lawful possession of his or her money or property permanently.

¶ 20. Because we conclude that inclusion of "an instruction within an instruction" in a burglary charge is actually a wise practice, we cannot agree with defendant that inclusion of the elements of larceny amounted to plain error here. Why this is the "better practice" is clear: to determine whether a defendant had the requisite intent to commit a crime, a juror would have to know the elements of that crime. See *Smith*, 479 A.2d at 818. Without being aware of the elements of the intended crime, a juror might mistakenly convict a defendant on faulty assumptions about what is criminal and what is not.

¶ 21. We must also reject defendant's argument that the instruction confused jurors into thinking that they could convict defendant of burglary merely for damage to the barn or the store. In support of his claim, defendant points to the following language from the trial court's jury instructions: "Here the State alleges [defendant] stole money or property of the owner or person in possession by throwing a large rock to break the glass and plastic in the door of the barn and breaking the glass panel in the front door." Defendant takes this piece of the jury instructions out of context. See *Jones*, 2008 VT 67, ¶ 23 (noting that we must evaluate jury instructions in their entirety to determine their potential for prejudice). This statement was part of the instruction regarding the intent element of burglary. Because the rest of the instruction adequately described every other element of both burglary and larceny, we find it hard to believe that a juror would have been confused into thinking that throwing a rock through a door was an element of larceny.

*Affirmed.*